UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JOSIAS TCHATAT,                                  )
                                                 )        **AMENDED COMPLAINT**
                      Plaintiff,                 )
                                                 )        **JURY TRIAL DEMANDED**
      -against-                                  )
                                                 )        **14 Civ. 2385 (LGS)**
THE CITY OF NEW YORK; POLICE OFFICER             )
LIAM O'HARA, Shield No. 20203; POLICE            )
OFFICER HARRY AROCHO, Shield No. 24345;          )
JOHN DOES; RICHARD ROES; BEST BUY CO.,           )
INC., d/b/a BEST BUY CO. OF MINNESOTA;           )
SHWON EDMONDS; RICHARD CASTELLANO;               )
VAN MOBLEY; JESSE KEMPEN; JESSICA                )
DELESTIN; IAN PALMER; EASTERN                     )
SECURITY CORP.; SAMUEL J. VOTTA;                  )
ISIDORE CALECA; and MICHAEL MOES,                )
                                                 )
                      Defendants.                )
--------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    This is a civil action in which the plaintiff, JOSIAS
TCHATAT, seeks relief for the defendants' violation of his rights
secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983,
and 1985(3), by the United States Constitution, including its
Fourth and Fourteenth Amendments, and by the laws and
Constitution of the State and City of New York.  The plaintiff
seeks damages, both compensatory and punitive, affirmative and
equitable relief, an award of costs and attorneys' fees, and such
other and further relief as this court deems equitable and just.

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §§ 1981,1983, and 1985(3). Jurisdiction is conferred upon this court by 42 U.S.C. §§ 1981,1983, and 1985(3) and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.    The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.    Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

6.    Plaintiff was at all times relevant herein a resident of the State of New York, County of New York.  Plaintiff was born in Cameroon.  Plaintiff is a black man.

2

7.    Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.    Defendants POLICE OFFICER LIAM O'HARA, POLICE OFFICER HARRY AROCHO, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants POLICE OFFICER LIAM O'HARA, POLICE OFFICER HARRY AROCHO, and JOHN DOES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE OFFICER LIAM

3

O'HARA, POLICE OFFICER HARRY AROCHO, and JOHN DOES are sued
individually.

9.    Defendants RICHARD ROES are and were at all times
relevant herein duly appointed and acting supervisory officers,
servants, employees and agents of THE CITY OF NEW YORK and/or the
New York City Police Department, responsible for the training,
retention, supervision, discipline and control of subordinate
members of the police department under their command.  Defendants
RICHARD ROES are and were at all times relevant herein acting
under color of state law in the course and scope of their duties
and functions as supervisory officers, agents, servants, and
employees of defendant THE CITY OF NEW YORK, were acting for, and
on behalf of, and with the power and authority vested in them by
THE CITY OF NEW YORK and the New York City Police Department, and
were otherwise performing and engaging in conduct incidental to
the performance of their lawful functions in the course of their
duties.  Defendants RICHARD ROES are sued individually.

10.    At all times herein mentioned, defendant BEST BUY CO.,
INC., d/b/a BEST BUY CO. OF MINNESOTA (hereafter "BEST BUY") was and
is a foreign business corporation that operated, on the date of
Plaintiff's arrest as described herein, a retail store located at 517
East 117th Street, New York, NY.  It is designated as a foreign
business corporation by the NY State Department of State.

11.    At all times herein mentioned, defendant EASTERN SECURITY

4

CORP. (hereafter "EASTERN SECURITY") was and is a domestic business corporation that provided security services, on the date of Plaintiff's arrest as described herein, at the BEST BUY retail store located at 517 East 117th Street, New York, NY. It is designated as a domestic business corporation by the NY State Department of State.

12. On its website EASTERN SECURITY states that it "has unlimited resources from the ranks of law enforcement professionals and specially trained security personnel."

13. Defendant SAMUEL J. VOTTA is the President of EASTERN SECURITY. EASTERN SECURITY's website states that he is a former member of the New York City Police Department.

14. Defendant ISIDORE CALECA is a Senior project manager at EASTERN SECURITY (identified by EASTERN SECURITY's website as its Director of Personnel and Field Support). EASTERN SECURITY's website states that he is a former member of the New York City Department of Correction.

15. At all times herein mentioned, defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES were officers or employees of defendant BEST BUY and/or of EASTERN SECURITY, and were acting within the course and scope of their employment with defendants BEST BUY and EASTERN SECURITY.

16. Defendant SHWON EDMONDS, on September 20, 2011, was employed by defendant EASTERN SECURITY CORP.

5

17.   At all times herein mentioned, defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES were acting under color of state law.

18.   At all times herein mentioned, defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES, through their ongoing relationship, joint action, and conspiracy with, members of the New York City Police Department, were clothed with, and acted with impunity because they were clothed with and protected by, the authority of state law.

19.   Defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES are sued individually.

20.   At all times herein mentioned, defendant BEST BUY and/or EASTERN SECURITY, its agents, servants and/or employees, including defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES, were under an obligation to operate, manage, maintain, and control the premises, and their own and their subordinates' activities and behavior, in a careful, safe, and lawful manner.

6

21.  At all times herein mentioned, defendant BEST BUY and/or EASTERN SECURITY was under an obligation to use reasonable care in the hiring, training, retention, and supervision of its employees.

22.  At all times herein mentioned, defendant CITY was under an obligation to use reasonable care in the hiring, training, retention, and supervision of its employees.

## STATEMENT OF FACTS

23.  On the evening of September 20, 2011 Plaintiff was shopping at the BEST BUY store located at 517 E. 117th Street, New York, NY (which was designated BEST BUY Store # 1418).

24.  On information and belief, defendant CASTELLANO was working in a supervisory capacity as a loss prevention associate at BEST BUY Store # 1418.

25.  While Plaintiff was at the store, he needed to use the bathroom, and used the bathroom, at the store.

26.  Plaintiff then purchased a flashdrive at the store.

27.  As Plaintiff was leaving the store, following paying for the flashdrive, he was stopped by a few MICHAEL MOES employees of BEST BUY and/or EASTERN SECURITY, on information and belief including Defendants EDMONDS, KEMPEN, and CASTELLANO, and possibly Defendant MOBLEY as well.

28.  These MICHAEL MOES falsely accused Plaintiff of stealing property from the store, and said they had called the police (which

was, at that point in time, false).

29.   Defendant MOBLEY (in a written statement on BEST BUY stationary) stated that he was informed by Defendant JESSICA DELESTIN that Plaintiff had entered the bathroom with a product she believed had not been paid for.

30.   Plaintiff had not brought any merchandise into the bathroom.

31.   Plaintiff agreed that the police should be called, as he had not stolen anything, and had done nothing wrong, and was happy to explain himself to the police to clear up the situation.

32.   Defendants EDMONDS and CASTELLANO testified at Plaintiff's criminal trial that Plaintiff asked for the police to be called.

33.   The MICHAEL MOES asked Plaintiff to go with them to the security office to await the police.

34.   Plaintiff went with the MICHAEL MOES to the security office.

35.   Defendant CASTELLANO testified at Plaintiff's criminal trial that, once Plaintiff was in the security office – despite there being a telephone in the security office – Defendant CASTELLANO stepped out of the security office intending to call the police, and that he went back into the security office quickly thereafter when he heard a thump and saw the exterior wall of the security office move.

36.   Defendant EDMONDS tried to handcuff Plaintiff in the

8

security office.

37.   Plaintiff saw no reason why he should be handcuffed, as he had walked without need for any physical coercion to the security office to await the police.  Plaintiff therefore declined to be handcuffed by defendant EDMONDS.

38.   Plaintiff was attacked in the security room by defendants EDMONDS, MOBLEY, KEMPEN and CASTELLANO.

39.   Plaintiff was punched and kicked repeatedly in the head, face, and body by defendants EDMONDS, MOBLEY, KEMPEN and CASTELLANO, and forcibly handcuffed against his will.

40.   Plaintiff was kicked even after he was handcuffed by these Defendants.

41.   Defendants MOBLEY and CASTELLANO called Plaintiff a "nigger," and a "thief," and told Plaintiff that Plaintiff was just mad because he had gotten caught.

42.   Defendant SHWON EDMONDS was acting under color of law in a law enforcement capacity on September 20, 2011.

43.   According to the Security Proposal dated March 2, 2005 - signed by Defendant SAMUEL J. VOTTA, President of EASTERN SECURITY and a representative of BEST BUY, and which was the "interim instant agreement" governing the relationship between the companies - the rate of $███ per hour was to be paid by BEST BUY for the work of EASTERN SECURITY personnel classified as "Law-enforcement personnel" (elsewhere described as "Active / or Retired Law-Enforcement Personnel"), and the rate of $17.00 per hour was to be paid by BEST

BUY for the work of EASTERN SECURITY personnel classified as "Unarmed professional security guard" (elsewhere described as "Unarmed Professionally Trained Security Guards).

44.   EASTERN SECURITY's invoices and time-sheets indicate that BEST BUY paid EASTERN SECURITY at the rate of $█████ per hour for the work of Defendant SHWON EDMONDS, including his work on September 20, 2011.

45.   The first of EASTERN SECURITY's "POST ORDERS that all EASTERN SECURITY GUARDS assigned to BEST BUY must remember and follow AT ALL TIMES" states "1) NEVER put your hands on anyone UNLESS to PROTECT LIFE."

46.   Defendant EDMONDS violated this Post Order #1, by attempting to handcuff Plaintiff when such was entirely unnecessary for any purpose (let alone to protect life), as Plaintiff had voluntarily gone to the security office and was peacefully waiting for the police to arrive (and had in fact asked for the police to be called).

47.   Defendant ISIDORE CALECA assisted Defendant EDMONDS (his subordinate at EASTERN SECURITY) in constructing a false narrative as to what transpired concerning Plaintiff on September 20, 2011.

48.   Defendant ISIDORE CALECA drafted a false narrative – purporting to be a first person narrative by Defendant SHWON EDMONDS (but which misspelled his name and stated "I, Shawn Edmonds, Security officer for ESC [EASTERN SECURITY CORP.]" – and emailed it to Defendant EDMONDS on September 29, 2011.

49.



50.

51.

52. despite admitting that they were not able to observe Plaintiff while he was in the bathroom, and otherwise did not maintain continuous personal observation of Plaintiff, Defendants EDMONDS, MOBLEY, KEMPEN and CASTELLANO still made an "apprehension" of Plaintiff.

53.

54.

55.   Police Officers – on information and belief Defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO – arrived on the scene.

56.   Defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO first sought to speak with, and did speak with, the MICHAEL MOES employees of BEST BUY, including Defendant SHWON EDMONDS.

57.   When defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO approached the Plaintiff – despite the fact that it was plainly visible that Plaintiff had been the victim of a physical attack, and was on the floor of the office in obvious pain – they would not listen to a word that Plaintiff said, and cursed at, and were very rude, dismissive, and aggressive towards plaintiff.

58.   Defendant POLICE OFFICER LIAM O'HARA took a photograph, or photographs, on his personal cell phone, of injuries to Defendant EDMONDS' face.

59.   Defendant POLICE OFFICER LIAM O'HARA did not take any photographs of injuries to Plaintiff.

60.   Defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO would only listen to what the MICHAEL MOES employees of BEST BUY and/or EASTERN SECURITY had to say, and not to anything Plaintiff had to say.

61.   Plaintiff tried to explain to defendants POLICE OFFICER

LIAM O'HARA and POLICE OFFICER HARRY AROCHO that he had been attacked by the defendant employees of BEST BUY and/or EASTERN SECURITY.

62.  Defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO did not arrest any of the MICHAEL MOES employees of BEST BUY and/or EASTERN SECURITY, despite the fact that they had beaten Plaintiff up and illegally seized and handcuffed him.

63.  Defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO did not request to, and did not, review surveillance video footage that was readily available, and which if viewed would likely have fully exculpated Plaintiff.

64.  BEST BUY Store # 1418 was equipped with approximately 20 video surveillance cameras, that recorded events occurring in almost the entire shopping area of the store.

65.  Defendant CASTELLANO testified at Plaintiff's criminal trial that he was tracking Plaintiff's movements in the store with the store's video surveillance system.

66.  Defendants POLICE OFFICER LIAM O'HARA and POLICE OFFICER HARRY AROCHO arrested Plaintiff.

67.  Plaintiff was taken to the NYPD 25th Precinct.

68.  Plaintiff was then taken by the police, including POLICE OFFICER LIAM O'HARA, to St. Luke's Hospital.

69.  Plaintiff was then taken back to the Precinct.

70.  Plaintiff was then taken to Manhattan Central Booking.

71.   Plaintiff was initially charged with violation of New York State Penal Law § 155.25 (Petit Larceny), § 145.001 (1) (Criminal Mischief in the Fourth Degree), and § 110 / 120.00 (1) (Attempted Assault in the Third Degree).

72.   POLICE OFFICER LIAM O'HARA is the deponent on the Criminal Court Complaint that was lodged against Plaintiff and attests, under penalty of perjury, that he is informed by Security Officer 1 (Defendant VAN MOBLEY), that Defendant MOBLEY observed the Plaintiff inside the BEST BUY store located at 517 E. 117th Street, remove one memory card from a rack and conceal the memory card by placing the item inside the Plaintiff's pants pocket, and then attempt to leave the store in possession of the property and without paying for it. It is also alleged in the Criminal Court Complaint that Plaintiff was stopped and that Defendant MOBLEY recovered the memory card, valued at $9.99, from Plaintiff's pants pocket.  It is also alleged in the Criminal Court Complaint that POLICE OFFICER LIAM O'HARA is informed by Security Officer 2 (Defendant SHWON EDMONDS) that after Plaintiff was stopped by Defendant MOBLEY, Defendant EDMONDS observed Plaintiff forcibly strike Defendant EDMONDS' head with Plaintiff's head one time, causing Defendant EDMONDS' eye glasses to break and causing Defendant EDMONDS to suffer from redness and pain to his head.

73.   Defendant MOBLEY executed a Supporting Deposition under penalty of perjury, attesting that he was the person referred to as

14

Security Officer One in the Criminal Court Complaint, and that the facts in the Criminal Court Complaint that are attributed to him are true, and that he knows those facts from his personal knowledge.

74.   Defendant MOBLEY also executed a separate Shoplifting / Trespass Supporting Deposition, in which he affirms under penalty of perjury that he observed Plaintiff remove a camera memory card from a rack, and place it in his front right pants pocket. Defendant MOBLEY also attests in that document that he recovered the camera memory card from Plaintiff's front right pants pocket.

75.   Defendant MOBLEY also executed, under penalty of perjury, on behalf of BEST BUY – witnessed by Defendant POLICE OFFICER O'HARA – an NYPD "Complainant's Report of Lost or Stolen Property / Identity Theft," listing as stolen property "1 Sandisk," model / serial # SDSDB-2048-A11, valued at $9.99.

76.   Defendant EDMONDS executed a Supporting Deposition under penalty of perjury, attesting that he was the person referred to as Security Officer Two in the Criminal Court Complaint, and that the facts in the Criminal Court Complaint that are attributed to him are true, and that he knows those facts from his personal knowledge.   Defendant EDMONDS also wrote, by hand, on the Supporting Deposition "in addition, the defendant in the complaint head-but me 3 times."

77.   The allegations in the Criminal Court Complaint, and in these Supporting Depositions of Defendants MOBLEY and EDMONDS, are

lies.

78.   Plaintiff did not steal anything, or attempt to steal anything, from the BEST BUY on 517 E. 117th Street on September 20, 2011.

79.   Plaintiff was attacked and brutally beaten by the BEST BUY and/or EASTERN SECURITY employees when he declined to be handcuffed, and stiffened his body.

80.   Plaintiff did not strike or otherwise attack any of the BEST BUY and/or EASTERN SECURITY employees at all.

81.   Plaintiff was thereafter indicted and charged with violation of New York State Penal Law § 160.10(2)(a)(Robbery in the Second Degree) and § 160.05 (Robbery in the Third Degree) stemming from the false allegations made against him by defendants.

82.   Bail was set in the amount of $2,500 cash / $5,000 bond, which Plaintiff was unable to make, and Plaintiff was thereafter held in the custody of the New York City Department of Corrections.

83.   During the course of the prosecution Plaintiff suffered a mental breakdown due to the stress and misery of his circumstances, was found unfit to participate in his own defense, and on February 14, 2012 was committed to the custody of the Commissioner of Mental Health at the Kirby Forensic Psychiatric Center ("Kirby"), operated by the New York State Office of Mental Health, and transferred there from Rikers Island on February 21, 2012.

84.   Plaintiff spent approximately 6 or 7 months at Kirby,

16

until he was deemed able to once again assist in his own defense.

85.   In approximately August or September of 2012 Plaintiff was transferred back to Rikers Island from Kirby.

86.   Plaintiff was tried before a jury and acquitted of all charges on April 5, 2013.

87.   Plaintiff was deprived of his liberty for 18 ½ months (563 days) due to the false charges that were lodged against him by defendants.

88.   On information and belief the defendant employees of BEST BUY and /or EASTERN SECURITY purposely failed to preserve or destroyed exculpatory video evidence depicting the interior of the store on the date of Plaintiff's arrest, in support of their malicious prosecution of Plaintiff.

89.   The Legal Aid Society served a subpoena – that was signed for by a representative of BEST BUY - at the BEST BUY on 517 E. 117th Street on September 27, 2011, demanding production of, *inter alia*, "any and all **video or audio** recordings relating to the surveillance, apprehension, detention and interrogation of **Josias Tchatat** at 517 E. 117th Street, New York, NY, on **September 20, 2011.**" (Bold print in original).

90.   A BEST BUY incident report identifies 1 hour and 14 minutes of footage relative to Plaintiff, and notes that a "request" was made for video by Plaintiff's criminal defense attorney on September 27, 2011.

91.   The following stipulation between the Legal Aid Society

and the District Attorney's office was read to the jury by the judge at Plaintiff's criminal trial: "Both parties stipulate that the only surveillance recording provided by BEST BUY was in response to a subpoena by the defense and that the video provided by BEST BUY was determined to be blank."

92.   On information and belief the defendant employees of BEST BUY and /or EASTERN SECURITY and /or defendants POLICE OFFICER O'HARA and Defendant POLICE OFFICER AROCHO, fabricated evidence - including a photograph of an allegedly torn package for a memory card, and false statements - and purposely failed to preserve or destroyed other evidence (such as the memory card plaintiff was falsely accused of stealing, and its packaging, and the cell phone photo(s) POLICE OFFICER O'HARA took of Defendant SHWON EDMONDS' face), in support of their malicious prosecution of Plaintiff.

93.   Defendant SHWON EDMONDS testified at Plaintiff's criminal trial that he gave the memory card that Plaintiff was accused of trying to steal to a police office, on information and belief either POLICE OFFICER O'HARA or POLICE OFFICER AROCHO.

94.   POLICE OFFICER O'HARA testified at Plaintiff's criminal trial that he took the packaging for the memory card that Plaintiff was accused of trying to steal temporarily to the precinct to photograph it with the precinct's domestic violence camera, and that he returned it (the packaging) that evening to BEST BUY Store # 1418.

95.   POLICE OFFICER O'HARA testified that he did not recall

18

if the memory card itself was in the packaging, but that all he recalled receiving was the packaging, and that he did not recall having been separately provided with a memory card itself or seeing an actual memory card on September 20, 2011.

96.   POLICE OFFICER O'HARA testified that he did not take a photograph of the memory card itself.

97.   POLICE OFFICER O'HARA testified that he only vouchered a photograph of the packaging and a receipt, and did not voucher anything having to do with a memory card itself.

98.   POLICE OFFICER O'HARA testified that he returned the packaging for the memory card to BEST BUY Store # 1418 because it was their merchandise and he guessed that they hoped to sell it.

99.   POLICE OFFICER O'HARA testified that he lost his cell phone between six and twelve months after September 20, 2011, and in that time he never printed, emailed, downloaded, or otherwise backed-up the photograph(s) he took of Defendant SHWON EDMONDS' face.

100.   POLICE OFFICER O'HARA testified that, other than on September 20, 2011, he had been called to BEST BUY Store # 1418 many times concerning allegations of shoplifting.

101.   POLICE OFFICER O'HARA testified that he took Plaintiff to the hospital while Plaintiff was in his custody, and spent up to three hours with Plaintiff.

102.   POLICE OFFICER O'HARA made no efforts to ascertain — and was completely uninterested in Plaintiff's attempts to tell him —

19

how Plaintiff had been injured, and that Plaintiff had been injured from being attacked by Defendants EDMONDS, MOBLEY, CASTELLANO, and KEMPEN.

103. POLICE OFFICER O'HARA was aware that Defendant EDMONDS did not require any medical care stemming from the incident with Plaintiff.

104. Defendants POLICE OFFICER O'HARA and POLICE OFFICER AROCHO simply took the side of the BEST BUY and /or EASTERN SECURITY employees, and, on information and belief, did not conduct any inquiry or investigation other than speaking solely to the BEST BUY and /or EASTERN SECURITY employees, whose narrative they accepted unquestioningly.

105.   On information and belief, the NYPD had a policy, practice, and/or custom that members of the NYPD simply defer to accounts of alleged misconduct by members of the public given by management and/or security guards at retail and other business establishments in the CITY OF NEW YORK.

106. The BEST BUY and /or EASTERN SECURITY employees detained, handcuffed, beat and manhandled Plaintiff under color of law in that they and the other employees of BEST BUY and /or EASTERN SECURITY were granted by members of the NYPD a status according to which they were granted undue deference in their disputes (including physical disputes) with the public.

107.  Defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER and MICHAEL MOES acted

under color of law in that they willfully participated jointly with members of the NYPD, and members of the NYPD arrested Plaintiff (and declined to arrest SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, and JESSE KEMPEN for their vicious attack on the Plaintiff) based on statements made by BEST BUY and /or EASTERN SECURITY employees, including defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER and MICHAEL MOES, without conducting any independent or honest investigation, and granting undue deference to the narrative(s) provided by the BEST BUY and /or EASTERN SECURITY employees.

108. Defendants BEST BUY and /or EASTERN SECURITY, by and through its agents, servants and/or employees, including defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER and MICHAEL MOES, willfully participated in joint activity with defendant CITY, its agents, servants and/or employees, in having Plaintiff arrested, imprisoned, and charged without justification, privilege, or probable cause.

109. Based on the instigation, importuning, and encouragement by defendants BEST BUY and /or EASTERN SECURITY, its agents, servants and/or employees, including defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER and MICHAEL MOES, and without first conducting any reasonable or honest inquiry or investigation, defendants POLICE OFFICER O'HARA and POLICE OFFICER AROCHO intentionally and with deliberate indifference to Plaintiff's civil rights arrested Plaintiff, and caused criminal

21

charges to be lodged against him.

110.  BEST  BUY  and  /or  EASTERN  SECURITY  (including  its President, SAMUEL J. VOTTA, and its Senior Project Manager / Director of Personnel and Field Support, ISIDORE CALECA) knew of, or should have  known  of,  the  dangerous  propensities  of  defendants  SHWON EDMONDS,  RICHARD  CASTELLANO,  VAN  MOBLEY,  JESSE  KEMPEN,  JESSICA DELESTIN, IAN PALMER and MICHAEL MOES.

111.  For  example,  Defendant  SHWON  EDMONDS'  publicly accessible Facebook postings evidence a disturbing callousness, his taking pleasure in the difficulties (including legal difficulties) experienced by others, and the classification of people by racial stereotype, including the following:

      - two posts on February 5, 2012 showing photos he took of seemingly inebriated people slumped over on the subway;

      - a May 28, 2012 post of a photo of a woman from behind, asking  "WTF  [what  the  fuck]  wrong  with  women  trying  to  get attention..  N their girlfriend won't tell them the true!!  That they look like a ASS;"

      - a September 30, 2012 post of a photo of a woman from behind,  showing  her  thong  underwear  and  part  of  her  buttocks protruding from her pants, and commenting, "Wow … Now white chick have there pants hanging down….LOL [laugh out loud]…;"

      - a post on February 6, 2013 showing a photo he took of a seemingly inebriated person laying down on the subway;

      - a post showing a photo of a car with a "boot" on its

tire, commenting "Someone is going to b mad when they go to move there car …. Lmao [laugh my ass off]…."

112.  On October 21, 2010 New York County District Attorney Cyrus Vance announced the arrest and arraignment of, and the filing of felony Grand Larceny charges against, among others, Defendant SHWON EDMONDS for unemployment benefits fraud committed, on information and belief, in approximately 2008.

113.  Despite the filing of these felony charges directly implicating Defendant SHWON EDMONDS' honesty, Defendant EASTERN SECURITY continued to employ him as an armed security guard, and Defendants EASTERN SECURITY and BEST BUY permitted him to be employed as an armed security guard acting in a law enforcement capacity at the BEST BUY Store # 1418.

114.  Defendant SHWON EDMONDS accepted a plea bargain and pled guilty to Petit Larceny on June 1, 2011 as a disposition of these charges related to unemployment benefits fraud, and had to pay $3,847.50 in restitution as a condition of that plea bargain.

115.  Despite this guilty plea directly implicating Defendant SHWON EDMONDS' honesty, Defendants EASTERN SECURITY, and its agents, officers, and supervisory employees, including SAMUEL J. VOTTA, and ISIDORE CALECA, and BEST BUY, and its agents, officers, and supervisory employees, continued to employ him as an armed security guard acting in a law enforcement capacity at the BEST BUY Store # 1418.

116.  Defendant SHWON EDMONDS began working as an armed security

guard for Defendant EASTERN SECURITY in 2008.

117.  Defendant SHWON EDMONDS began working as an armed security guard acting in a law enforcement capacity at the BEST BUY Store # 1418 in, on information and belief, approximately March of 2011, and stopped working at the BEST BUY Store # 1418 in, on information and belief, approximately November of 2011.

118.  On information and belief, the BEST BUY Store # 1418 closed and ceased operations in early 2012.

119.  Defendant SHWON EDMONDS was still employed by Defendant EASTERN SECURITY as an armed security guard as of April of 2013.

120.  As of April of 2013, Defendant SHWON EDMONDS testified that he had assisted with approximately 25 shoplifting arrests at various retail stores during his career.

121.  Although Defendant SHWON EDMONDS, upon applying for employment with Defendant EASTERN SECURITY in 2007, completed a document allowing Defendant EASTERN SECURITY to seek information from his prior employers concerning, *inter alia*, his job performance and honesty, Defendant EASTERN SECURITY, and its agents, officers, and supervisory employees, including its President, SAMUEL J. VOTTA, and its Senior Project Manager / Director of Personnel and Field Support, ISIDORE CALECA, on information and belief never sent the forms to either of two prior employers who Defendant SHWON EDMONDS listed on his job application.

122.  Defendant SHWON EDMONDS testified at Plaintiff's

24

criminal trial that the law enforcement duties he performed at Defendant BEST BUY's Store # 1418 were "intertwined" with the duties performed by Defendant BEST BUY's loss prevention associates.

123.   Defendant BEST BUY's loss prevention associates included, on information and belief, Defendants CASTELLANO, KEMPEN, DELESTIN, and MOBLEY.

124.   On information and belief Defendant DELESTIN falsely informed the New York County District Attorney's office during the course of Plaintiff's prosecution that Plaintiff had been suspiciously looking over his shoulder, and that Plaintiff had entered the bathroom at BEST BUY Store # 1418 holding a memory card package.

125.   As a result of the collective acts of defendant CITY, its agents, servants and/or employees, including defendants POLICE OFFICER O'HARA and POLICE OFFICER AROCHO, and defendants BEST BUY and /or EASTERN SECURITY, its agents, servants and/or employees, including defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES, plaintiff sustained loss of liberty, physical injury, and suffered emotional distress, and has otherwise been damaged.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

126.   The plaintiff incorporates by reference the

allegations set forth in all preceding paragraphs as if fully set forth herein.

127.   By their conduct and actions in racially profiling, harassing, detaining, searching, seizing, arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating rights to equal protection of, violating rights to due process of, discriminating against, inflicting emotional distress upon, failing to intercede on behalf of, and in fabricating evidence concerning the September 20, 2011, incident regarding Plaintiff, the individual defendants, acting both on their own and in conspiracy with each other, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused damage and injury in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

128.   As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

129.   The plaintiff incorporates by reference the

allegations set forth in all preceding paragraphs as if fully set forth herein.

130.   By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory individuals / officers RICHARD ROES, CASTELLANO, VOTTA, CALECA, and those other MICHAEL MOES who exercised supervisory responsibilities, caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its Fourth and Fourteenth amendments.

131.   As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

<u>THIRD CLAIM</u>

**LIABILITY OF THE CITY OF NEW YORK,
BEST BUY, AND EASTERN SECURITY
FOR CONSTITUTIONAL VIOLATIONS**

132.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

133.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and

through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

134.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

135.  The misconduct detailed above was also the result of an institutional policy, practice, and/or custom of defendant CITY whereby NYPD officers responding to scenes such as that described above are discouraged from making further inquiry or investigation prior to arresting a subject other than receiving information from the personnel at retail and other business establishments, which is given undue deference.

136.  Further, the misconduct detailed above was also the result of institutional policies, practices, and/or customs of defendants CITY, BEST BUY and EASTERN SECURITY to purposely overlook and / or actively abet the unconstitutional and racist targeting of racial minorities at retail stores in New York City

(known in shorthand vernacular as "shop and frisk").  This practice has long been of concern to the minority and civil rights communities in New York City, and only recently begun to be addressed by the police department and the business community due to recent large-scale exposure in the media.  *See*, e.g., article by J. David Goodman, <u>Bratton and Sharpton Discuss Profiling Issue</u>, N.Y. Times (April 4, 2014), <u>http://www.nytimes.com/2014/04/04/nyregion/bratton-and-sharpton-discuss-profiling-issue.html?ref=nyregion</u>; *see also*, article on website of PIX 11 news, <u>EXCLUSIVE: NYPD [Internal Affairs Division] investigating role of 2 cops in Barney's shop-and-frisk arrest (May 20, 2104)</u>, <u>http://pix11.com/2014/05/20/nypd-investigating-2-cops-involved-in-barneys-shop-and-frisk-arrest/</u> .

137. Defendant  CITY  authorized  and  tolerated  as institutionalized practices, and ratified the misconduct detailed above, by failing to take adequate precautions in the supervision and/or  training  of  police  personnel,  including  specifically defendants Police Officers O'HARA, AROCHO and JOHN DOES.

138. The defendant CITY's policies/customs and defendant CITY's failure to supervise and/or train its employees, including defendants Police Officers O'HARA, AROCHO and JOHN DOES rose to the level of deliberate indifference to the consequences of its actions, and indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, <u>inter alia</u>, plaintiff's Fourth and Fourteenth Amendment rights.

139.  At all times material to this complaint, defendants
BEST BUY and EASTERN SECURITY, acting through their employees and
agents, and through the individual defendants had de facto
policies, practices, customs and usages, including acting in
conspiracy and conjunction with employees and agents of the City
of New York concerning the aforementioned unconstitutional
policies, practices, customs, and usages, which were a direct and
proximate cause of the unconstitutional conduct alleged herein.

140.  At all times material to this complaint, defendants
BEST BUY and EASTERN SECURITY, acting through their employees and
agents (including their officers, managers and security
personnel), and through the individual defendants, had de facto
policies, practices, customs, and usages of failing to properly
train, screen, supervise, or discipline its employees and agents,
and of failing to inform the individual defendants' supervisors
of their need to train, screen, supervise or discipline said
employees and agents.  These policies, practices, customs, and
usages were a direct and proximate cause of the unconstitutional
conduct alleged herein.

141.  As a result of the foregoing, plaintiff was deprived
of his liberty, suffered specific and serious bodily injury, pain
and suffering, psychological and emotional injury, great
humiliation, costs and expenses, and was otherwise damaged and

30

injured.

## FOURTH CLAIM

### DEPRIVATION OF RIGHTS UNDER
### 42 U.S.C. §1981

142.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

143.  The Plaintiff was subjected to racially discriminatory conduct by defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, ISIDORE CALECA and MICHAEL MOES in violation of his rights as guaranteed under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

144.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### DEPRIVATION OF RIGHTS UNDER
### 42 U.S.C. §1985(3)

145.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

146.  Defendants POLICE OFFICER LIAM O'HARA, POLICE OFFICER HARRY AROCHO, RICHARD ROES, SHWON EDMONDS, RICHARD CASTELLANO,

VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, ISIDORE CALECA and MICHAEL MOES engaged in a conspiracy to deprive Plaintiff, on the basis of his race, national origin, ethnicity and/or color, of the equal protection of the laws and/or of equal privileges and immunities under the laws.

147.  As a result cf the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

**RESPONDEAT SUPERIOR LIABILITY OF BEST BUY and EASTERN SECURITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983, 42 U.S.C. § 1981, AND 42 U.S.C. § 1985(3)**

148.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

149.  The conduct of defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES alleged herein, occurred while they were on duty and/or in uniform, and/or in and during the course and scope of their duties and functions as managerial, retail and / or security employees in the management and maintenance of BEST BUY and EASTERN SECURITY, and/or while they were acting under color of state law as agents

32

of defendants BEST BUY and EASTERN SECURITY and/or while they were acting under color of state law through conspiracy with officers and/or officials of THE CITY OF NEW YORK and/or while they were engaging in, and conspiring to engage in, racially discriminatory conduct toward Plaintiff in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3), and, as a result, defendants BEST BUY and EASTERN SECURITY are liable to the plaintiff pursuant to the doctrine of respondeat superior for deprivation of rights under the United States Constitution and 42 U.S.C. § 1983, 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3).

150.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**SEVENTH CLAIM**

**RESPONDEAT SUPERIOR LIABILITY OF BEST BUY and EASTERN SECURITY FOR STATE LAW VIOLATIONS**

151. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

152. The conduct of defendants SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, SAMUEL J. VOTTA, ISIDORE CALECA and MICHAEL MOES alleged herein, occurred while they were on duty and/or in uniform,

and/or in and during the course and scope of their duties and functions as managerial, retail, and/or security personnel in the management and maintenance of BEST BUY and EASTERN SECURITY, and, as a result, defendants BEST BUY and EASTERN SECURITY are liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

153. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### ASSAULT AND BATTERY

154. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

155. By the actions described above, defendants EDMONDS, CASTELLANO, MOBLEY, and KEMPEN did inflict assault and battery upon plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

156. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain

34

and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### FALSE ARREST AND IMPRISONMENT

157. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

158. By the actions described above, defendants EDMONDS, CASTELLANO, MOBLEY, KEMPEN, DELESTIN, and PALMER caused to be falsely arrested and imprisoned or falsely arrested and imprisoned plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

159. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

### MALICIOUS PROSECUTION

160. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

161. By the actions described above, defendants EDMONDS, CASTELLANO, MOBLEY, KEMPEN, DELESTIN, PALMER, and CALECA maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

162.  As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### ELEVENTH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

163. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

164. By the actions described above, defendants EDMONDS, CASTELLANO, MOBLEY, and KEMPEN engaged in extreme and outrageous

36

conduct, which intentionally caused severe emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

165. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### ABUSE OF PROCESS

166. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

167. By the conduct and actions described above, defendants EDMONDS, CASTELLANO, MOBLEY, KEMPEN, DELESTIN, PALMER, and CALECA employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process. The acts and conduct of defendants were the direct and proximate

cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

168. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### THIRTEENTH CLAIM

### TRESPASS

169. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

170. By the actions described above, defendants EDMONDS, CASTELLANO, MOBLEY, and KEMPEN willfully, wrongfully and unlawfully trespassed upon the person of plaintiff.

171. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### FOURTEENTH CLAIM

### NEGLIGENCE

172. The plaintiff incorporates by reference the allegations

set forth in all preceding paragraphs as if fully set forth
herein.

173. Defendants EDMONDS, CASTELLANO, MOBLEY, and KEMPEN,
jointly and severally, negligently caused injuries, emotional
distress and damage to the plaintiff. The acts and conduct of the
defendants were the direct and proximate cause of injury and
damage to the plaintiff and violated his statutory and common law
rights as guaranteed by the laws and Constitution of the State of
New York.

174. As a result of the foregoing, plaintiff was deprived of
his liberty, suffered specific and serious bodily injury, pain
and suffering, psychological and emotional injury, great
humiliation, costs and expenses, and was otherwise damaged and
injured.

<u>**FIFTEENTH CLAIM**</u>

**NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING**

175. The plaintiff incorporates by reference the allegations
set forth in all preceding paragraphs as if fully set forth
herein.

176. Defendants BEST BUY and EASTERN SECURITY negligently
hired, screened, retained, supervised and trained the individual
defendants who were in their employ. The acts and conduct of the
defendants were the direct and proximate cause of injury and
damage to the plaintiff and violated his statutory and common law

rights as guaranteed by the laws and Constitution of the State of New York.

177. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTEENTH CLAIM

### CONSTITUTIONAL TORT

178. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

179. Defendants BEST BUY, EASTERN SECURITY, SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, ISIDORE CALECA and MICHAEL MOES, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 11 and 12 of the New York State Constitution.

180. A damages remedy here is necessary to effectuate the purposes of §§ 6, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

181. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great

humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTEENTH CLAIM

### New York City Human Rights Law

182. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

183. By the actions described above, Defendants BEST BUY, EASTERN SECURITY, SHWON EDMONDS, RICHARD CASTELLANO, VAN MOBLEY, JESSE KEMPEN, JESSICA DELESTIN, IAN PALMER, ISIDORE CALECA and MICHAEL MOES violated plaintiff's rights as protected by the New York City Human Rights Law (NYC Admin. Code § 8-101 et seq., including § 8-502).  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his rights as guaranteed thereby.

184. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empanelling of a jury to consider the merits of the claims herein;

    d.  Costs and interest and attorney's fees;

    e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
          August 8, 2014

                    Jeffrey Rothman, Esq.
                    315 Broadway, Suite 200
                    New York, New York 10007
                    (212) 227-2980

                    Attorney for Plaintiff