UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

JOSIAH TCHATAT,

        Plaintiff,

   -against-

THE CITY OF NEW YORK, *et al.*,

        Defendants.

----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/28/15

14 Civ. 2385 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

   Plaintiff Josiah Tchatat was arrested at a Best Buy store, charged with robbery, prosecuted, and ultimately acquitted by a jury. The Amended Complaint (the "Complaint") raises seventeen claims alleging (1) constitutional violations pursuant to 42 U.S.C. §§ 1981, 1983 and 1985(3); (2) torts under New York common law and the New York State Constitution; and (3) violations of the New York City Human Rights Law. Defendants are Best Buy Co., Inc. ("Best Buy") and four of its employees; Eastern Security Corp. ("Eastern") and three of its employees; one other employee of either Best Buy or Eastern whose employer is not alleged; and two police officers and their employer, the City of New York. Defendants move to dismiss all of the claims against them. For the following reasons, these motions are granted in part and denied in part.

I.  **BACKGROUND**

   The following facts are taken from the Complaint, unless otherwise noted, and are assumed to be true for purposes of this motion.

   A.  **The Parties**

   Plaintiff is a black man who was born in Cameroon. Defendant Best Buy operates retail stores across the country. Defendants Richard Castellano (working as a supervisor), Jessica Delestin, Jesse Kempen and Van Mobley were Best Buy employees who worked as loss

prevention associates at a Best Buy store located on East 117th Street in New York, New York (the "Store").

Defendant Eastern provided security services at the Store.  Defendant Shwon Edmonds was employed by Eastern as an armed security guard and was working with the Best Buy loss prevention team on the day Plaintiff was arrested.  When Edmonds applied for employment at Eastern in 2007, Eastern failed to send background check forms to two of Edmonds' former employers.  Although Edmonds pleaded guilty in June 2011 to petit larceny concerning unemployment benefits fraud, Eastern and Best Buy continued to employ him.  The Complaint alleges that Edmonds' public Facebook postings -- detailed in the Complaint -- "evidence a disturbing callousness, his taking pleasure in the difficulties [of others], and the classification of people by racial stereotype."

Defendant Samuel J. Votta is Eastern's President.  He signed the contract that governed the relationship between Best Buy and Eastern.  Defendant Isidore Caleca is a "[s]enior project manager" at Eastern who is listed on its website as Director of Personnel and Field Support.

Defendants Liam O'Hara and Harry Arocho were the New York City police officers (together, the "Police Officers") who arrived at the Store and placed Plaintiff under arrest.  The Complaint does not allege Defendant Ian Palmer's employer or position.[1]

---

[1]     The Complaint also names as Defendants: John Does, unnamed New York City police officers; Richard Roes, unnamed New York City supervisory officers; and Michael Moes, unnamed officers or employees of Best Buy or Eastern.  These unidentified parties are not the subject of the pending motions and are not discussed further below.

**B.      Institutional Defendants' Policies, Practices and Training Programs**

The Complaint includes allegations concerning certain policies, practices and training regimens of Defendants Best Buy, Eastern and the City.

Best Buy had a specific policy that listed several requirements before employees were permitted to apprehend a suspected shoplifter.  Eastern posted written notices instructing its employees that they should "NEVER put [their] hands on anyone UNLESS to PROTECT LIFE."

Regarding the City, the Complaint alleges that the City had policies, practices and customs that "discouraged" police officers responding to alleged shoplifting incidents "from making further inquiry or investigation prior to arresting a subject" and, instead, encouraged them to give "undue deference" to information from employees at retail stores and other businesses. Citing two news reports, the Complaint also asserts that the City engaged in a practice known as "shop and frisk," or the "targeting of racial minorities at retail stores in New York City."

Finally, the Complaint alleges that Defendants Best Buy and its employee Castellano, Eastern and its employees Votta and Caleca, and the City failed to properly train, screen, supervise and discipline their employees and subordinates in interacting with suspected shoplifters.

**C.      The Incident**

On September 20, 2011, Plaintiff was shopping at the Store.  He used the restroom and then purchased a flash drive.  Delestin informed Mobley that she had seen Plaintiff enter the restroom with a product he had not purchased.  As Plaintiff walked toward the exit of the Store, several Defendants -- including Edmonds, Kempen, Castellano and possibly Mobley and others -- prevented him from leaving.  They accused Plaintiff of stealing merchandise and said they had

called the police, which at that point was not true.  Plaintiff denies that he brought any

merchandise into the bathroom or attempted to steal anything from the Store.

The employees then asked Plaintiff to go with them to the Store's security office to wait

for the police.  Plaintiff agreed, as he "had done nothing wrong" and "was happy to explain

himself to the police to clear up the situation."  After Plaintiff entered the security office,

Castellano left the office to call the police, although there was a telephone available inside the

office.  Castellano quickly returned when he heard a "thump" and saw the exterior wall of the

office move.

In the office, Edmonds attempted to handcuff Plaintiff, but Plaintiff objected and stiffened

his body.  Plaintiff denies striking or attacking anyone.  Plaintiff was then attacked in the security

office by Edmonds, Mobley, Kempen and Castellano.  After being forcibly handcuffed, he was

kicked and punched repeatedly in the head, face and body by Edmonds, Mobley, Kempen and

Castellano.  While beating him, Mobley and Castellano called Plaintiff a "nigger" and a "thief."

It is unclear from the Complaint when the police were contacted.  Nevertheless,

Defendants O'Hara and Arocho were the responding police officers who arrived on the scene.

O'Hara testified that, before that day, he had been called to the Store many times about

shoplifting allegations.  The Police Officers first spoke with the Best Buy employees.  When they

approached Plaintiff -- "despite the fact that it was plainly visible that Plaintiff had been the

victim of a physical attack, and was on the floor of the office in obvious pain" -- the Police

Officers "did not listen to a word that Plaintiff said, [] cursed at, and were very rude, dismissive,

and aggressive towards [P]laintiff."  O'Hara and Arocho "would only listen to what the

employees of [Best Buy and Eastern Security] had to say, and not to anything Plaintiff had to

say."  Although he was aware that Edmonds did not require medical attention, O'Hara

nevertheless used his personal cellular phone to take pictures of injuries to Edmonds' face. O'Hara did not take pictures of Plaintiff's injuries. The Police Officers then arrested Plaintiff, without reviewing surveillance video footage that "would likely have fully exculpated Plaintiff."

O'Hara took Plaintiff to the precinct, then to St. Luke's Hospital, then back to the precinct and then to Manhattan Central Booking. O'Hara spent, in total, about three hours with Plaintiff. During that time, O'Hara displayed no interest in Plaintiff's version of how he had been injured.

At the time of his arrest, Plaintiff was charged with petit larceny, criminal mischief in the fourth degree and attempted assault in the third degree. In an affidavit in support of the criminal complaint, Officer O'Hara testified that Mobley "observed the Plaintiff inside the [Store] remove one memory card" -- valued at $9.99 -- "from a rack and conceal the memory card by placing the item inside the Plaintiff's pants pocket, and then attempt to leave the store in possession of the property and without paying for it." Officer O'Hara further testified that after Mobley stopped Plaintiff, Plaintiff struck Edmonds' head, causing Edmonds' glasses to break and injuring Edmonds' head. Mobley swore to three separate documents essentially confirming O'Hara's statements about the theft. Edmonds swore to one document confirming O'Hara's statement about Plaintiff striking Edmonds, but added that Plaintiff "head-but[tted]" him three times. The Complaint alleges that all of these allegations about Plaintiff are lies.

The Complaint alleges that the individual Defendants continued to engage in various forms of misconduct throughout Plaintiff's criminal proceedings. Employees of Best Buy or Eastern Security destroyed exculpatory video evidence and ultimately produced only a blank surveillance recording. Defendants also failed to preserve evidence, including the memory card that Mobley said he recovered from Plaintiff's pocket. In addition, Best Buy and Eastern Security employees, as well as O'Hara and Arocho, fabricated testimony and evidence, including

5

"a photograph of an allegedly torn package for a memory card." The Complaint also avers that Delestin provided false testimony to the District Attorney that she had observed Plaintiff enter the bathroom with a memory card package. The Complaint further alleges that, shortly after the incident, Caleca assisted Edmonds, his subordinate, in "constructing a false narrative as to what transpired concerning Plaintiff" and e-mailed what he had written to Edmonds on September 29, 2011.

### D.    Prosecution, Acquittal and This Action

Plaintiff was later indicted and the charges were upgraded to robbery in the second degree and robbery in the third degree. He was tried by a jury in state court and acquitted of both charges on April 5, 2013.

The Complaint alleges that, at Plaintiff's criminal trial, Edmonds and O'Hara presented problematic accounts of the incident. Edmonds testified that he gave the memory card that Plaintiff allegedly attempted to steal to either O'Hara or Arocho. On the other hand, O'Hara testified that he did not recall receiving the memory card and did not photograph the memory card itself, even though the entire case against Plaintiff was based on his alleged theft of the memory card. O'Hara did, however, photograph the empty packaging of the memory card and returned that to Best Buy "because it was their merchandise and he guessed that they hoped to sell it." O'Hara also testified that, at some point before trial, he had lost his personal cellular phone along with all of the pictures stored on it, including those of the facial injuries that Edmonds allegedly suffered during the incident.

Since Plaintiff could not make bail, he was held in custody from September 20, 2011, until his acquittal on April 5, 2013. During that time, he spent about six or seven months at a maximum-security psychiatric hospital because he had suffered a mental breakdown and could

6

not participate in his defense.  According to the Complaint, Plaintiff was deprived of his liberty for a total of 563 days due to the false charges that were lodged against him by defendants.

Plaintiff commenced this action on April 4, 2014, and filed the currently operative Complaint on August 15, 2014.

## II.   LEGAL STANDARD

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Section 1983 Claim (First Claim)

The Complaint asserts one cause of action against all individual Defendants under § 1983. Defendants' motions to dismiss are denied, except as to Defendants Palmer and Votta.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation
> . . . , of any State . . . , subjects, or causes to be subjected, any citizen
> of the United States or other person . . . to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured . . . .

7

42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  The first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted).

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).  Private parties may be held liable for constitutional violations if they are "jointly engaged with state officials in the prohibited action."  *United States v. Price*, 383 U.S. 787, 794 (1966).  "Joint action may be shown through a 'plan, prearrangement, conspiracy, custom, or policy' such that the state or its agents do not exercise judgment independent of the non-state actor."  *Kohlhausen v. SUNY Rockland Cmty. Coll.*, No. 10 Civ. 3168, 2011 WL 2749560, at *6 (S.D.N.Y. July 13, 2011) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)).

"To prove a § 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between a state actor and a private entity; (2) [an] act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *accord Betts v. Shearman*, 751 F.3d 78, 84-85 (2d Cir. 2014) ("[A] claim against a private entity must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act . . . if the two share some common goal to violate plaintiff's rights.") (internal quotation marks and citation omitted).

8

The Complaint sufficiently alleges a § 1983 conspiracy, specifically that certain individual Defendants conspired to deprive Plaintiff of his constitutional rights by violently restraining and searching him, falsely accusing him of shoplifting and providing false evidence against him, and that some of these defendants were motivated at least in part by racial animus. An individual's "intentional participation in the furtherance of the conspiracy [can] be inferred from the overt acts taken by them." *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488, 2012 WL 3594288, at *8 (S.D.N.Y. Aug. 16, 2012) (quoting *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 582 (E.D.N.Y. 1998)).  The co-conspirators include the Police Officer Defendants who allegedly acted to further the conspiracy by helping to hide and manipulate the evidence of the private parties' misconduct.  *See Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005) ("[When] state officials communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct . . . .").

In addition to a § 1983 conspiracy, the detailed factual allegations in the Complaint are sufficient to allege excessive force, unreasonable search and seizure, false arrest and malicious prosecution, all in violation of the Fourth Amendment, and violations of the right to a fair trial and to equal protection, in violation of the Fourteenth Amendment.

With the exception of Defendants Palmer and Votta, the Complaint adequately alleges that all individual Defendants participated in the conspiracy and/or directly violated Plaintiff's constitutional rights including, but not limited to, the following.

1. Defendant Delestin falsely informed her co-worker Mobley and prosecutors that Plaintiff had entered the bathroom with a product he had not purchased, which sufficiently alleges

malicious prosecution and violation of the right to a fair trial, *see generally Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (malicious prosecution); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (right to a fair trial).

2.  Defendants Edmonds, Kempen, Castellano and Mobley prevented Plaintiff from leaving the store, attacked him, beat him and forcibly handcuffed him, while Mobley and Castellano called Plaintiff "nigger" and "thief," which sufficiently alleges excessive force, unreasonable search and seizure, false arrest and denial of equal protection, *see generally Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) (excessive force); *Posr v. Doherty*, 944 F.2d 91, 96-101 (2d Cir. 1991) (false arrest); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (equal protection).

3.  Police Officers O'Hara and Arocho, after arriving on the scene, showed no interest in Plaintiff's lying on the security office floor and his apparent state as a "victim of a physical attack," and instead cursed at Plaintiff and were "rude, dismissive, and aggressive" toward him.  Although O'Hara knew that Plaintiff required medical attention and Edmonds did not, O'Hara took photographs only of Edmonds' face.  At Plaintiff's criminal trial, O'Hara testified that he had lost his cellular phone and failed to back up the pictures of Edmonds's face, even though the charges against Plaintiff included an element of force.  *See* N.Y. Penal Law §§ 160.05, 160.10.  These allegations are sufficient to allege malicious prosecution and denial of a right to a fair trial.  *See Jocks*, 316 F.3d at 136 (malicious prosecution); *Ricciuti*, 124 F.3d at 130 (right to a fair trial).

4.  The individual Defendants (a) fabricated and purposely failed to preserve evidence and (b) fabricated testimony used in Plaintiff's prosecution.  For example, Mobley falsely swore that he observed Plaintiff steal a memory card and that he recovered it from

10

Plaintiff's pants pocket.  In addition -- although the entire case was based on Plaintiff's alleged theft of a memory card -- the card itself was never found or produced in the criminal case.  Relatedly, O'Hara testified at Plaintiff's trial that he had photographed only the empty packaging of the memory card and returned the packaging to Best Buy to be resold.  These allegations are sufficient to allege malicious prosecution and denial of a right to a fair trial.  *See Jocks*, 316 F.3d at 136 (malicious prosecution); *Ricciuti*, 124 F.3d at 130 (right to a fair trial).

5.  Caleca, a manager at Eastern who was not present at the Store on September 20, 2011, assisted his subordinate in constructing a false narrative of the incident.  Drawing all inferences in Plaintiff's favor, this allegation is sufficient to allege a denial of Plaintiff's right to a fair trial.

By contrast, the Complaint contains no specific allegations at all about Palmer and Votta. Thus, Plaintiff's § 1983 conspiracy claim survives as to all individual Defendants except Palmer and Votta.

The Best Buy and Eastern Defendants' arguments to the contrary are unpersuasive.  It is true that "the providing of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action."  *Anghel v. N.Y.S. Dep't of Health*, 947 F. Supp. 2d 284, 302 (E.D.N.Y. 2013) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)), *aff'd*, 589 Fed. App'x 28 (2d Cir. 2015).  It is also true that a § 1983 claim must fail where the chain of causation between the alleged constitutional violations and injury are broken by the intervening exercise of independent judgment by the arresting officers or prosecutor.  Here, however, the Complaint contains ample allegations to infer that (1) the Police Officers acted in

11

concert with the Best Buy and Eastern Defendants to deprive Plaintiff of his constitutional rights, and (2) accordingly, there was no break in the chain of causation between their actions and Plaintiff's constitutional injuries. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (affirming dismissal of complaint where there was no evidence that defendant "misled or pressured the official who could be expected to exercise independent judgment").

The arguments on behalf of the Police Officers are similarly unavailing. The City Defendants argue that the Complaint does not allege malicious prosecution because (1) the Complaint has not rebutted the presumption of probable cause created by the indictment and (2) the Complaint does not allege that either of the Police Officers initiated the prosecution.

First, the Complaint pleads sufficient allegations to overcome the presumption of probable cause created by the indictment. "Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment, and a jury could reasonably find that the indictment was secured through bad faith or perjury, the presumption of probable cause created by the indictment may be overcome." *Manganiello v. City of New York*, 612 F.3d 149, 1622 (2d Cir. 2010) (internal quotation marks omitted). Here, as discussed above, the Complaint avers that the Police Officers presented false testimony, fabricated evidence and intentionally lost exculpatory evidence in Plaintiff's prosecution. At the pleading stage, these allegations suffice to overcome the presumption of probable cause.

Second, for similar reasons, the Complaint sufficiently alleges that O'Hara and Arocho "initiated" Plaintiff's prosecution. "To initiate a prosecution, a defendant must do more than report the crime or give testimony." *Manganiello*, 612 F.3d at 163. "[A] defendant can [] be held liable for initiating a prosecution when that defendant fabricates evidence, and forwards that

evidence to prosecutors." *Lopez v. City of New York*, No. 14 Civ. 3743, 2015 WL 1954470, at *6 (E.D.N.Y. Apr. 29, 2015) (citing *Manganiello*, 612 F.3d at 163).  Contrary to the City Defendants' arguments, the Complaint alleges that the Police Officers did more than simply "relay to the district attorney's office the information given" to them by the Best Buy and Eastern Defendants.

The City Defendants also argue that O'Hara and Arocho are shielded from liability by qualified immunity.  At the pleading stage, when all reasonable inferences must be drawn in Plaintiff's favor, it is premature to conclude that O'Hara and Arocho are shielded from liability by qualified immunity.  The Complaint adequately pleads allegations that (1) the Police Officers conspired with the other individual Defendants to violate Plaintiff's rights and (2) they presented fabricated evidence and false testimony to provide probable cause for Plaintiff's arrest and prosecution.  On these allegations, O'Hara and Arocho are not entitled to qualified immunity. *See Turkmen v. Hasty*, 789 F.3d 218, 264 (2d Cir. 2015) ("[E]ven without a definitive ruling from this Court on the application of section 1985(3) to federal officials, federal officials could not reasonably have believed that it was legally permissible for them to conspire with other federal officials to deprive a person of equal protection of the laws.") (quoting *Iqbal v. Hasty*, 490 F.3d 143, 177 (2d Cir. 2007)); *Schindler v. French*, 232 F. App'x 17, 19-20 (2d Cir. 2007) (summary order) (reversing dismissal on qualified immunity grounds where complaint alleged that "defendants used false deposition testimony and medical reports to improperly obtain a search warrant and pursue false criminal charges against plaintiff").

Accordingly, Defendants' motions to dismiss Plaintiff's § 1983 claim are granted as to Palmer and Votta, but denied as to all other individual Defendants.

### B.     Remaining Federal Claims

#### 1.     Section 1983 Claim for Supervisory Liability (Second Claim)

The Complaint alleges that Castellano, Votta and Caleca failed to supervise in violation of § 1983 by "failing to remedy the wrongs committed by their subordinates, and . . . failing to properly train, screen, supervise, or discipline." Defendants' motions to dismiss Plaintiff's claim for supervisory liability are granted as to Votta but denied as to Castellano and Caleca.

To state a claim for supervisory liability under § 1983, a plaintiff must plead "individual, personalized liability on the part of each [] defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *accord Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each [] defendant, through the official's own individual actions, has violated the Constitution."). A plaintiff may demonstrate that a supervisory defendant was personally involved in the alleged constitutional violation through evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Raspardo*, 770 F.3d at 116 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

As discussed supra, the Complaint contains specific allegations about how Castellano and Caleca "participated directly in the alleged constitutional violation." By contrast, the only specific allegations about Votta relevant to this claim are that (1) he is the President of Eastern Security, (2) he signed the contract with Best Buy, (3) Eastern continued to employ Edmonds

after conviction for unemployment benefits fraud and (4) no one at Eastern sent background check forms to two of Edmonds' former employers in 2007.  These allegations are insufficient to state a claim for supervisory liability against Votta.

By contrast, the Complaint adequately pleads allegations to state a claim for supervisory liability against Castellano and Caleca.  In addition to alleging their direct participation in the alleged constitutional violations, the Complaint avers facts that support reasonable inferences that Castellano and Caleca were grossly negligent in supervising their subordinates.  *See Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520-21 (S.D.N.Y. 2013) (denying motion to dismiss supervisory liability claim where complaint alleged that subordinate told plaintiff that "he was just complying with his supervisors' directives"); *Mitchell v. Keane*, 974 F. Supp. 332, 341 (S.D.N.Y. 1997) (denying summary judgment motion on supervisory liability claim where supervisor -- who was present during illegal action -- could be found "grossly negligent in his supervision" if he "was aware of and did not attempt to stop [the] illegal action"); *cf. Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) ("[P]lanners may be liable under section 1983 to the extent that a plan for a search or seizure, as formulated and approved by those defendants, provides for and results in an unconstitutionally excessive use of force."), *cert. denied sub nom. Torresso v. Terebesi*, 135 S. Ct. 1842 (2015).

Defendants' motions to dismiss Plaintiff's supervisory liability claim are therefore granted as to Votta, but otherwise denied.

### 2.      Constitutional Violations (Third Claim)

Defendants' motions to dismiss Plaintiff's third claim, asserting constitutional violations by the City, Best Buy and Eastern are granted.  Although the Complaint does not identify the legal basis for this claim, it is construed as a § 1983 claim against the City, Best Buy and Eastern

15

for the constitutional violations of their respective employees.  Neither private employers nor municipalities are liable under § 1983 on a theory of respondeat superior for the constitutional torts of their employees.  In order to state a claim, the plaintiff must prove that "action pursuant to official [] policy of some nature caused a constitutional tort."  *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 691 (1978); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses.") (internal citations omitted).

The claim seems to be attempting to make allegations that would satisfy *Monell*.  It alleges that the City, Best Buy and Eastern had "*de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct" suffered by Plaintiff; that the City had policies, practices and customs of (1) "failing to properly train, screen, supervise, or discipline" employees and (2) "discourag[ing]" "NYPD officers responding to scenes such as that described" in the Complaint "from making further inquiry or investigation prior to arresting a subject"; and -- citing two news reports for support -- that the City engaged in a practice known as "shop and frisk" -- the "targeting of racial minorities at retail stores in New York City."

In *Monell*, the Supreme Court held that a plaintiff could bring suit against a local government or municipality under § 1983 if the injury complained of resulted from the "execution of a government's policy or custom, . . . [which] may fairly be said to represent official policy."  436 U.S. at 694.  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee."  *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  Thus, "isolated acts . . . by non-policymaking municipal

employees are generally not sufficient" to establish municipal liability. *Id.* at 81 (citing *Villante v. Dep't of Corr.*, 786 F.2d 516, 519 (2d Cir. 1986)).

Generally, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Rather, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary" to give rise to *Monell* liability. *Connick*, 131 S.Ct. at 1360 (citation and internal quotation marks omitted).

However, a municipality may be held liable for a single action made by a government official, where the official possesses "final policymaking authority . . . with respect to the particular conduct challenged in the lawsuit." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008). Supreme Court precedent has suggested that the "policymaker" theory of *Monell* liability is available only in rare circumstances. When addressing *Monell* claims premised on a single act by a policymaker, courts must "adhere to rigorous requirements of culpability and causation" so as to avoid collapsing *Monell* liability into respondeat superior liability. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 415 (1997).

### a.      Best Buy and Eastern

Here, the Complaint fails to allege that either Best Buy or Eastern had a policy that caused the alleged constitutional violations. *Rojas*, 924 F.2d at 409 (holding that, to prevail on *Monell* claim against private store, plaintiff must show that store "had a policy of arresting shoplifting suspects on less than probable cause"); *accord Iskander v. Vill. of Forest Park*, 690 F.2d 126, 129 (7th Cir. 1982) (concluding that testimony by store detective that he acted in accordance with

store's operating procedures was "wholly insufficient to raise a triable issue of whether [the store] had an unconstitutional policy or custom").

The Complaint instead suggests that the individual Best Buy and Eastern Defendants acted in contravention of their employers' policies.  It alleges that Eastern instructed its employees that they should "NEVER put [their] hands on anyone UNLESS to PROTECT LIFE," and that Best Buy had a specific policy that listed several requirements for employees before attempting to apprehend a suspected shoplifter.

Plaintiff's argument that a "single, episodic instance" of discriminatory conduct suffices to state a claim omits a key legal requirement under *Monell* and its progeny.  Where a plaintiff seeks to hold an entity liable for a "single decision" by an official, "the plaintiff must show that the official had final policymaking power." *City of Waterbury*, 542 F.3d at 37.  To support *Monell* liability, this single decision must be plausibly read to represent the policy of the entity as a whole. *See City of Waterbury*, 542 F.3d at 40 (reasoning that policymaker's unconstitutional action must be "in furtherance of municipal policies" such that municipal policies could be said to be a "moving force" behind constitutional injuries).  This theory applies equally to claims against private entities. *See Mejia v. City of New York*, 228 F. Supp. 2d 234, 243 (E.D.N.Y. 2002) ("[A] private corporation can be liable under *Monell* for the single act of an employee with final policymaking authority . . . ." (citing *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728–29 (4th Cir. 1999)).

Here, the Complaint does not -- and presumably cannot -- allege that any of the individual Defendants who interacted personally with Plaintiff at the Store had such policymaking power. *See Fredricks v. City of New York*, No. 12 Civ. 3734, 2014 WL 3875181, at *7 (S.D.N.Y. July 23, 2014) (dismissing *Monell* claim where "there are no allegations in the complaint that

demonstrate" correctional captain or subordinate officers "were high-ranking officials with final authority over significant matters"); *Frith v. Hill*, No. 07 Civ. 5899, 2009 WL 3073716, at *16 (S.D.N.Y. Sept. 23, 2009) ("Plaintiff's statements are not enough to allege plausibly that the field supervisor who authorized destruction of Plaintiff's property possessed such a high rank within the [federal agency] that his actions constituted official policy.").  Accordingly, the Third Claim is dismissed as to Best Buy and Eastern.

### b.     The City

As to the City, the Complaint's allegations concerning failure to train or supervise and a practice of discouraging police officers from making independent investigations before arresting a suspected shoplifter are "mere assertion[s]" that are insufficient to state a *Monell* claim. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *accord Lowery v. City of New York*, No. 10 Civ. 7284, 2014 WL 2567104, at *6 (S.D.N.Y. June 6, 2014) (collecting cases and holding that "boilerplate, conclusory allegations" that simply "reiterate the 'custom and policy' language in *Monell* . . . are insufficient to withstand dismissal").

Other than conclusory statements, the Complaint fails to allege any connection between an alleged citywide "shop and frisk" policy and Plaintiff's constitutional injuries.  *See Jimenez v. City of New York*, No. 14 Civ. 02994, 2014 WL 5089392, at *5 (S.D.N.Y. Oct. 9, 2014) (concluding that, "without any facts to suggest that this policy was the 'moving force' behind [plaintiff's] arrest and prosecution, the *Monell* claim fails").  The Complaint's citation to news reports concerning "shop and frisk" are likewise immaterial.  *See Peterec v. City of New York*, No. 14 Civ. 309, 2015 WL 1027367, at *7 (S.D.N.Y. Mar. 6, 2015) (granting motion to dismiss

where "Plaintiff's references to unconnected, irrelevant litigation are patently inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to Plaintiff's alleged violation"); *Hickey v. City of New York*, No. 01 Civ. 6506, 2004 WL 2724079, at *21 (S.D.N.Y. Nov. 29, 2004) (noting that court cannot "take judicial notice of a number of highly-publicized episodes of alleged police abuse . . . and extrapolate from those assumptions an effect on the present episode"), *aff'd*, 173 F. App'x 893 (2d Cir. 2006). The Complaint therefore fails to state a viable *Monell* claim against the City.

Plaintiff's Third Claim for constitutional violations is dismissed in its entirety. To the extent that Plaintiff intended the Third Claim to allege violations of the New York State Constitution, that is addressed below under section (C)(7) concerning Plaintiff's state constitutional tort claim.

### 3. Section 1981 Claim (Fourth Claim)

Plaintiff's § 1981 claim is dismissed as duplicative of his § 1983 claim. "[T]he express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733 (1989) (emphasis added). While the Second Circuit has noted that the Civil Rights Act of 1991 may have statutorily overruled *Jett*, it has not issued a precedential ruling to that effect. *See Anderson v. Conboy*, 156 F.3d 167, 178-79 n.19 (2d Cir. 1998). Accordingly, courts in this Circuit continue to follow *Jett*. *See, e.g., Jeune v. City of New York*, No. 11 Civ. 7424, 2014 WL 83851, at *3 (S.D.N.Y. Jan. 9, 2014); *Mercado v. City of New York*, No. 13 Civ. 389, 2014 WL 627035, at *1 (S.D.N.Y. 2014); *Whaley v. City Univ. of N.Y.*, 555 F.Supp.2d 381, 401 (S.D.N.Y. 2008) (collecting cases). Accordingly, Plaintiff's § 1981 claim is dismissed.

### 4.      Section 1985(3) Claim (Fifth Claim)

The Complaint alleges that O'Hara, Arocho, Edmonds, Castellano, Mobley, Kempen, Delestin, Palmer and Caleca conspired "to deprive Plaintiff, on the basis of his race, national origin . . . , of the equal protection of the laws" and thereby caused Plaintiff a loss of liberty and bodily injury in violation of § 1985(3).[2]  For the following reasons, Defendants' motions to dismiss this claim are granted in part and denied in part.

Unlike claims under § 1983, claims under § 1985(3) do not require state action.  *See Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990).  "The four elements of a § 1985(3) claim are:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory

---

[2]      Section 1985(3) provides in relevant part:

> If two or more persons conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

animus behind the conspirators' action." *Mian*, 7 F.3d at 1088 (internal quotation marks omitted).

The Complaint's allegations are sufficient to support an inference of an agreement among Delestin, Castellano, Mobley, Kempen and Edwards to violate Plaintiff's right to equal protection of the laws because of his race.  Although the allegations of racial profiling and targeting are conclusory, the Complaint also specifically alleges that (1) Delestin, Mobley, Kempen and Castellano were working together as loss prevention associates at the Store on the day of the incident; (2) Edmonds -- an Eastern employee -- was working with them; (3) Delestin falsely accused Plaintiff, who is black, of stealing merchandise; (4) causing Mobley, Kempen, Castellano and Edmonds to "apprehend" Plaintiff, and then attack and beat him, while Mobley and Castellano used a racial slur.  Drawing all inferences in favor of Plaintiff, these allegations are sufficient to survive a motion to dismiss as to these Defendants.

On the other hand, the Complaint does not allege any specific facts from which to infer that any of the remaining Defendants -- O'Hara, Arocho, Palmer or Caleca -- acted with race-based animus.  Thus, the Complaint does not state a claim under § 1985(3) against them.  *See Biswas v. City of New York*, 973 F. Supp. 2d 504, 534 (S.D.N.Y. 2013) (holding that complaint alleged sufficient facts to plead § 1983 conspiracy between police and Department of Education defendants, but dismissing § 1985(3) claim because complaint contained allegations showing racial animus by Department of Education defendants but not police defendants), *appeal dismissed sub nom. Biswas v. Kwait*, 576 F. App'x 58 (2d Cir. 2014), *as amended* (Aug. 28, 2014).

### 5.   Respondeat Superior Claim for Federal Violations (Sixth Claim)

Plaintiff seeks to hold Best Buy and Eastern liable for their respective employees' violations of §§ 1983, 1981 and 1985(3) on a theory of respondeat superior.  The motion is granted as it relates to the underlying § 1983 and § 1981 claims, but denied as it relates to the underlying § 1985(3) claim.

As discussed in connection with the Third Claim, there is no respondeat superior liability for § 1983 claims.  *See City of Waterbury*, 542 F.3d at 36 (noting that "a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of respondeat superior" (internal quotation marks omitted)).  In contrast, respondeat superior claims may reach private entities under § 1981 and § 1985.  *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (addressing employer liability for § 1981 claim); *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (rejecting private organization's argument that "liability does not arise under § 1985 on theories of respondeat superior or vicarious liability"); *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1263 (10th Cir. 1995) (applying respondeat superior to § 1981 claim); *Mitchell v. Cnty. of Nassau*, No. Civ. 05-4957, 2008 WL 1803644, at *2 (E.D.N.Y. Apr. 17, 2008) (denying private defendant's motion to dismiss vicarious liability claim under § 1985); *but see Bowen v. Rubin*, 385 F. Supp. 2d 168, 176 (E.D.N.Y. 2005) (applying *Monell* prohibition of vicarious liability, as applied to § 1983 claims, to § 1985 claims brought against private entities).  It is black-letter law, however, that "where no underlying cause of action exists, no vicarious liability can exist either."  *Gailey v. State Farm Ins. Co.*, 199 F.3d 1332 (9th Cir. 1999).

Accordingly, Plaintiff's respondeat superior claim is dismissed (1) as to his § 1983 claim, as respondeat superior is inapplicable to such claims and (2) as to his § 1981 claim, as the

underlying claim has been dismissed.  Plaintiff's respondeat superior claim survives as it relates

to his § 1985(3) claim against Eastern and Best Buy.

### C.     State Law Claims

#### 1.     Time-Barred Claims (Eighth, Eleventh, Twelfth and Thirteenth Claims)

Plaintiff's claims for (1) assault and battery, (2) trespass (3) intentional infliction of

emotional distress ("IIED") and (4) abuse of process are dismissed as time barred.

Under New York law, actions for intentional torts -- including assault, battery, IIED and

abuse of process -- are subject to a one-year limitations period.  *See* N.Y. C.P.L.R. § 215(3)

(designating one-year limitations period for "action[s] to recover damages for assault, battery,

false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or

a violation of the right of privacy"); *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (1st Dep't 2002) ("A

claim for damages for an intentional tort, including a tort not specifically listed in [C.P.L.R. §

215(3)], is subject to a one-year limitation period." (citation omitted)); *see also Bridgers v.

Wagner*, 915 N.Y.S.2d 265, 266 (1st Dep't 2011) (applying one-year statute of limitations to

IIED claim); *Bittner v. Cummings*, 591 N.Y.S.2d 429, 431 (2d Dep't 1992) ("Abuse of process

and malicious prosecution are both intentional torts which are governed by [] the one-year Statute

of Limitations.").

Assault and battery claims alleged under New York law accrue on the date of the alleged

incident of "offensive touching."  *See Palker v. MacDougal Rest. Inc.*, 947 N.Y.S.2d 465, 466

(1st Dep't 2012) (holding that assault claim accrued on date of alleged assault).  Claims alleging

trespass to one's person -- recognized by New York law as an intentional tort -- are the same as

claims alleging assault and battery.  *See Dries v. Gregor*, 424 N.Y.S.2d 561, 563 (4th Dep't

1980) ("Battery remains by definition an intentional tort, just as its progenitor trespass."); *see also Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 301 (S.D.N.Y. 2009) ("[T]respass and false arrest are intentional torts under New York law . . . .").  IIED claims, based on harm allegedly incurred from an assault, accrue on the date of the alleged assault.  *See Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495, 510-11 (S.D.N.Y. 2013) (holding that IIED claim arising from incident in which plaintiff was attacked by customer at workplace accrued on date of assault).

 "A claim for abuse of process accrues at such time as the criminal process is set in motion, unless the plaintiff is unaware, though no fault of his own, of facts supporting the claim, in which case the cause of action accrues upon discovery."  *Pinter v. City of New York*, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013) (internal quotation marks and alteration omitted) (citing *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980)), *reconsideration denied* (Oct. 23, 2013).  "[T]he accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor."  *Cunningham v. State*, 53 N.Y.2d 851, 853 (1981).

 The Complaint alleges that the incident took place on September 20, 2011.  Plaintiff's claims for assault and battery, trespass and IIED therefore accrued on that date.  Plaintiff's claim for abuse of process likewise accrued on September 20, 2011, when Plaintiff was arrested and booked.  As this action was commenced on April 4, 2014 -- more than two years later -- Plaintiff's claims alleging assault and battery, trespass, IIED and abuse of process are dismissed as untimely.[3]

---

[3]    Plaintiff argues that his assault, trespass and IIED claims should be deemed timely, as they "arose as part and parcel of the same incident in which he was falsely arrested."  Plaintiff points to no authority supporting his position, and the Court is unable to find any.

### 2.    False Arrest and Malicious Prosecution Claims (Ninth and Tenth Claims)

Plaintiff asserts false arrest claims against the individual Best Buy Defendants, Palmer and Edmonds, and malicious prosecution claims against the same Defendants as well as Caleca. Defendants' motions to dismiss these claims are granted in part and denied in part.

As an initial matter, neither of these claims may be dismissed as time barred at this stage. Because the statute of limitations provides an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims.  Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  Malicious prosecution claims are subject to a one-year limitations period and accrue on the date that the prosecution ends in the plaintiff's favor. *See Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (noting that one element of a malicious prosecution claim is the "termination of the proceeding in plaintiff's favor").  Likewise, the one-year limitations period for false arrest and imprisonment claims begins when the plaintiff is released from custody. *See Bellissimo v. Mitchell*, 995 N.Y.S.2d 603, 605 (2d Dep't 2014) ("Causes of action based on false arrest and false imprisonment accrue upon the subject's release from confinement and are governed by a one-year statute of limitations." (internal quotation marks, citations and alterations omitted)).

Plaintiff's false arrest and malicious prosecution claims accrued on April 5, 2013, the date Plaintiff was acquitted and released from state custody.  This action was commenced less than one year later.  At this stage, Defendants have not established that these claims were brought clearly out of time. *See Williams v. CVS Pharmacy, Inc.*, 6 N.Y.S.3d 78, 80 (2d Dep't 2015) (in action against retail pharmacy, affirming plaintiff's assault claim -- measured from date of

alleged assault -- as time-barred but reversing dismissal of false arrest and malicious prosecution claims -- measured, respectively, from date of plaintiff's release from confinement and from "favorable termination of the underlying criminal proceeding").

A private party may be held liable for a false arrest effectuated by a police officer if the party in some way "induced the officer to act." *Mesiti v. Wegman*, 763 N.Y.S.2d 67, 69 (2d Dep't 2003) (citation omitted); *accord Armatas v. Maroulleti*, No. 08 Civ. 310, 2010 WL 4340437, at *20 (E.D.N.Y. Oct. 19, 2010), *report and recommendation adopted in relevant part*, No. 08 Civ. 310, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010), *aff'd in part*, 484 F. App'x 576 (2d Cir. 2012). The Complaint sufficiently alleges that Edmonds and the individual Best Buy Defendants induced the police and prosecutors to act -- through (1) Delestin's false reports about Plaintiff's behavior in the Store, (2) Castellano, Kempen, Edmonds and Mobley's violent detention of Plaintiff and (3) Edmonds' and Mobley's false statements to the police and prosecution. The false arrest claim against Palmer is dismissed because the Complaint makes no individualized allegations against him.

Similarly, the malicious prosecution claim survives against Delestin, Edmonds and Mobley for the same reasons the false arrest claim survives against them. This claim also survives as to Caleca, who allegedly assisted Edmonds in drafting a false narrative of the incident. Although the Complaint does not explicitly state whether or how this narrative was used in Plaintiff's criminal proceedings, it can be reasonably inferred that the narrative contributed to Edmonds' testimony at Plaintiff's trial. The malicious prosecution claim is dismissed as to Palmer, Castellano and Kempen because the Complaint does not allege that they provided false information that ultimately resulted in Plaintiff's prosecution.

Accordingly, the false arrest claim is dismissed as to Palmer but otherwise denied, and the malicious prosecution claim is dismissed as to Palmer, Castellano and Kempen, but otherwise denied.

### 3.     Negligence Claim (Fourteenth Claim)

Plaintiff's negligence claim against the four men who allegedly beat him -- Edmonds, Castellano, Mobley and Kempen -- is dismissed for failure to allege any facts necessary to state a claim.  "Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."  *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).  The Complaint does not allege any of these elements.  To the contrary, a critical part of the Complaint is that these four Defendants intentionally assaulted Plaintiff causing him injuries, not that an accident somehow occurred as a result of their lack of care.  Accordingly, Plaintiff's negligence claim is dismissed.

### 4.     Negligent Hiring, Screening, Retention, Supervision and Training Claim (Fifteenth Claim)

Defendants move to dismiss Plaintiff's claim for negligent hiring, screening, retention, supervision and training.  Plaintiff did not present any arguments in opposition.  This claim is therefore dismissed as abandoned.  *See, e.g.*, *Gaston v. City of New York*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) (dismissing negligent hiring claim where plaintiff "failed to respond or even mention th[is] claim[] in his opposition brief to defendants' summary judgment motion"); *Moccio v. Cornell Univ.*, No. 09 Civ. 3601, 2009 WL 2176626, at *4 (S.D.N.Y. July 21, 2009) (granting motion to dismiss where, "[w]hatever the merit of [defendants'] argument, plaintiff has

abandoned the . . . claim, as her motion papers fail to contest or otherwise respond to defendants' contention"), *aff'd*, 526 F. App'x 124 (2d Cir. 2013).

### 5. New York City Human Rights Law Claim (Seventeenth Claim)

Defendants' motions to dismiss Plaintiff's claim under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "NYCHRL") are granted as to Palmer and Caleca but are otherwise denied. The Complaint alleges a violation of the NYCHRL but does not specify which provisions were violated. Several sections of the NYCHRL are potentially relevant. Section 8-107(4) prohibits unlawful discriminatory practices on the basis of, inter alia, race, color and national origin in public accommodations. *See* N.Y.C. Admin. Code § 8-107(4)(a) (making it unlawful for providers of public accommodation "to refuse, withhold from or deny to such person" on the basis of their "actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status . . . any of the accommodations, advantages, facilities and privileges of any such place"). Chapter 6 prohibits, among other things, interference with a person's exercise of his federal or state constitutional rights on the basis of race, color or national origin. *See, e.g.*, *id.* § 8-603. Section 8-502 of the NYCHRL creates a private right of action for individuals "aggrieved by . . . an act of discriminatory harassment or violence as set forth in chapter six of this title." *Id.* § 8-502. As was the case for Plaintiff's § 1985(3) claim, discriminatory motive is critical to state a claim under the NYCHRL.

For the same reasons discussed regarding Plaintiff's § 1985(3) claim, the allegations in the Complaint are sufficient to state a claim against Castellano, Mobley, Kempen, Delestin and Edmonds. The Complaint also states a claim against their employers Best Buy and Eastern. *See id.* § 8-107(4); *Acosta v. Loews Corp.*, 717 N.Y.S.2d 47, 52-53 (1st Dep't 2000) (reinstating

29

NYCHRL claims and common law claims against employers).  Accordingly, Defendants'

motions on this claim are granted only as to Palmer and Caleca but denied as to all other

Defendants.

### 6.     Respondeat Superior Claim for Violations of State Law (Seventh Claim)

Defendants' motions to dismiss Plaintiff's respondeat superior claim against Best Buy and

Eastern for state law violations are granted in part and denied in part.

Under the doctrine of respondeat superior, an employer may be held vicariously liable for

the tort of its employee.  *See Shapiro v. Kronfeld*, No. 00 Civ. 6286, 2004 WL 2698889, at *24

(S.D.N.Y. Nov. 24, 2004) (citing *Wende C. v. United Methodist Church*, 776 N.Y.S.2d 390, 395

(4th Dep't 2004)).  Respondeat superior applies to "a tort committed by an employee in the

course of the performance of his or her duties, even if such duties are carried out in an irregular

fashion or with disregard of instructions."  *Adams v. New York City Transit Auth.*, 626 N.Y.S.2d

455, 460 (1st Dep't 1995), *aff'd*, 88 N.Y.2d 116 (1996).  However, "[i]n order for liability to

attach, the tortious act must have in some way been effectuated to advance the employer's

interest."  *Id.*

As discussed above, the Complaint pleads viable claims for false arrest and malicious

prosecution against individual Best Buy and Eastern Defendants.  The Complaint is also

sufficient to support an inference that the allegedly unlawful conduct advanced the interests of

Best Buy and Eastern -- for instance, that the individual Defendants' conduct was designed to

maximize "loss prevention" at the Store.  Thus, Plaintiff's respondeat superior claim survives

insofar as it relates to Plaintiff's false arrest and malicious prosecution claims, but does not

survive as to the underlying state tort claims that are dismissed.

### 7.      State Constitutional Tort (Sixteenth Claim)

The Complaint alleges a violation of the New York State Constitution by Defendants Castellano, Mobley, Kempen, Delestin, Palmer and their employer Best Buy, and against Edmonds and Caleca and their employer Eastern.  The motions to dismiss Plaintiff's tort claims under the New York State Constitution are granted.

In *Brown v. State of New York*, the New York State Court of Appeals held that civil actions for damages may be brought for violations of section 11 -- which guarantees equal protection of laws -- and section 12 -- which prohibits unreasonable search and seizure -- of Article I of the New York State Constitution.  89 N.Y.2d 172, 192-93 (1996).  "However, *Brown*'s application has been limited by both [federal] district and state courts to situations where the plaintiffs have no alternative remedies that would protect their interests."  *Vilkhu v. City of New York*, No. 06 Civ. 2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (collecting cases).  "District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983."  *Hershey*, 938 F. Supp. 2d at 520 (quoting *Campbell v. City of N.Y.*, No. 09 Civ. 3306, 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)).

Plaintiff's constitutional tort claims are dismissed against (1) Palmer because the Complaint contains only general conclusory allegations about him; (2) the remaining individuals at issue because the Complaint alleges a viable §1983 claim against them; and (3) Best Buy and Eastern because the Complaint states a claim under the NYCHRL against them.  Accordingly, Defendants' motions to dismiss Plaintiff's state constitutional tort claim are granted in their entirety.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' motions are:

1.  GRANTED as to Plaintiff's § 1983 Claim (First Claim) against Palmer and Votta, but DENIED against all other individual Defendants;

2.  GRANTED as to Plaintiff's § 1983 Claim for Supervisory Liability (Second Claim) against Votta, but DENIED against Castellano and Caleca;

3.  GRANTED as to Plaintiff's Constitutional Violations Claim (Third Claim) in its entirety;

4.  GRANTED as to Plaintiff's § 1981 Claim (Fourth Claim) in its entirety;

5.  GRANTED as to Plaintiff's § 1985(3) Claim (Fifth Claim) against O'Hara, Arocho, Palmer and Caleca, but DENIED against Delestin, Castellano, Mobley, Kempen and Edmonds;

6.  GRANTED as to Plaintiff's Respondeat Superior Claim for Federal Violations (Sixth Claim) as it relates to Plaintiff's § 1983 and § 1981 claims, but DENIED as it relates to his § 1985(c) claim against Best Buy and Eastern;

7.  DENIED as to Plaintiff's Respondeat Superior Claim for Violations of State Law (Seventh Claim) against Best Buy and Eastern as the claim relates to false arrest and malicious prosecution, but GRANTED as to all other underlying state tort claims;

8.  GRANTED as to Plaintiff's state law claims for (1) assault and battery, (2) trespass, (3) IIED and (4) abuse of process (Eighth, Eleventh, Twelfth and Thirteenth Claims) in their entirety;

9.  GRANTED as to Plaintiff's state law False Arrest Claim (Ninth Claim) against Palmer, but DENIED against Edmonds, Castellano, Mobley, Kempen and Delestin;

10. GRANTED as to Plaintiff's state law Malicious Prosecution Claim (Tenth Claim) against Palmer, Castellano and Kempen, but DENIED as to Edmonds, Mobley, Delestin and Caleca;

11. GRANTED as to Plaintiff's Negligence Claim (Fourteenth Claim) in its entirety;

12. GRANTED as to Plaintiff's Negligent Hiring, Screening, Retention, Supervision and Training Claim (Fifteenth Claim) in its entirety;

13. GRANTED as to Plaintiff's State Constitutional Tort Claim (Sixteenth Claim) in its entirety;

14. GRANTED as to Plaintiff's NYCHRL Claim (Seventeenth Claim) against Palmer and Caleca, but DENIED against Best Buy, Eastern, Edmonds, Castellano, Mobley, Kempen, and Delestin;

Accordingly, Plaintiff's Third, Fourth, Eighth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth and Sixteenth Claims are dismissed in their entirety.  All other claims survive, at least in part.

The Clerk of Court is directed to close the motions at Docket Nos. 48, 100, 103 and 105.

SO ORDERED.

Dated: August 28, 2015
       New York, New York


**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**