```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSIAS TCHATAT,                                             )
                                                            )
                        Plaintiff,                          )
                                                            )
     -against-                                              )
                                                            )    14 Civ. 2385 (LGS) (GWG)
THE CITY OF NEW YORK; POLICE OFFICER                        )
LIAM O'HARA, Shield No. 20203; POLICE                       )
OFFICER HARRY AROCHO, Shield No. 24345;                     )
JOHN DOES; RICHARD ROES; BEST BUY CO.,                      )
INC., d/b/a BEST BUY CO. OF MINNESOTA;                      )
SHWON EDMONDS; RICHARD CASTELLANO;                          )
VAN MOBLEY; JESSE KEMPEN; JESSICA                           )
DELESTIN; IAN PALMER; EASTERN                               )
SECURITY CORP.; SAMUEL J. VOTTA;                            )
ISIDORE CALECA; and MICHAEL MOES,                           )
                                                            )
                        Defendants.                         )
-----------------------------------------------------------X
```

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO PRECLUDE THE AMENDED EXPERT REPORT OF DR. JONATHAN M. RAINES AND FOR RELIEF UNDER DAUBERT V. MERRELL DOW PHARMACEUTICALS, 509 U.S. 579 (1993)

## ARGUMENT

Plaintiff respectfully submits this reply brief in further support of his motion to preclude Defendants from relying upon Dr. Raines' amended expert report. Defendants' opposition papers only serve to support Plaintiff's arguments that Dr. Raines' amended expert report goes well beyond permissible expert testimony, invades the province of the jury in opining on Plaintiff's credibility and on the ultimate issues in the case, and that it should be precluded as scientifically invalid and unreliable under <u>Daubert</u>, and under Fed.R.Ev. 403.

Defendants argue that because they have retained Dr. Raines to purportedly opine about Plaintiff's mental state at the time of the incident, and not to opine as to his damages or to give an opinion as to the causation of Plaintiff's mental health condition, it was appropriate for Dr. Raines to decline to interview Plaintiff, and on the basis of a manifestly incomplete review of the voluminous record in this case (and cherry-picking from, and distorting, those incomplete records to boot), to render a psychiatric diagnosis of Plaintiff and eventually opine for the jury in this case concerning Plaintiff's lack of credibility and motive to lie for monetary gain.

Defendants on page 1 of their opposition brief couch their goal as having Dr. Raines render "his expert opinion about the plaintiff's mental state at the time of the incident - September 20, 2011 - and how that mental state may have affected his actions on that date and affects his ability to recall the events of September 20, 2011." But this is just a tendentious, smokescreen rephrasing of what the Defendants are plainly attempting to do here, which was stated with greater directness in Dr. Raines' original report, where he opined directly about Plaintiff's motive to lie for monetary

gain in this lawsuit, his view that there is "reason to view [Plaintiff's] veracity with a high degree of suspicion," and his concluding:

> opinion that [Plaintiff's] allegations regarding the alleged incident(s) of September 20, 2011 are not based in reality, but rather are delusional in nature, and in fact, did not occur. Furthermore, I am of the opinion that he is attempting to use his delusions in a manipulative, self-serving manner, of which this litigation is the end result.

In the amended report Dr. Raines seeks to render these same improper opinions in a more indirect way by, *inter alia*, diagnosing (on page 4 of the amended report) Plaintiff with ▮▮▮▮▮▮▮▮▮▮, and quoting from page ▮▮ of the DSM-5 that people with that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants argue that the Court should close its eyes to Dr. Raines' original report, and consider the amended report in a vacuum. Plaintiff submits that the original report states directly what Defendants are now hoping to achieve more indirectly, but equally improperly, through the amended report: to confuse and prejudice the jury by having a licensed psychiatrist opine that Plaintiff is not credible and is motivated by a desire for secondary gain, and to do so based upon manifestly unreliable methodologies. Dr. Raines has prepared both his original report and the amended report in a manner that is contrary to the accepted ethical guidelines of his profession, and in a manner that is on its face deeply unreliable and highly prejudicial.

Defendants are also incorrect when they state on page 1 of their opposition brief that Plaintiff does not attack Dr. Raines' "credentials, training, or expertise." Plaintiff made the argument in his moving brief that Dr. Raines' *curriculum vitae* (which was annexed as Appendix A to both the original report and the amended report) gives no indication of any special training or expertise in the evaluation of persons of foreign cultures, which is contrary to Section 5 of the

3

American Academy of Psychiatry and Law, "Ethics Guidelines for the Practice of Forensic Psychiatry" (Adopted May, 2005) (which was Exhibit 4 to the Rothman Decl.). A psychiatrist who had the requisite special training or expertise to evaluate someone who was born and raised in the foreign culture in which Plaintiff was born and raised, and in conjunction with that special training or expertise had actually taken the time to meet with Plaintiff, and engage with him in conversation as an actual person and evaluate him in light of that, and in light of an evaluation of the full, voluminous record in this case, would perhaps have been able to render a sufficiently reliable diagnosis and opinion. But Dr. Raines' lack of proper training or expertise in the evaluation of persons of foreign cultures, his deeply incomplete review of only a partial record, and his failure to ever meet with Plaintiff, make his conclusions completely unreliable.

Dr. Raines' reliance on the two psychiatric reports that are annexed as Exhibits B and C to Mr. Kuruvilla's Declaration only serves to compound the unreliability. As pointed out in Plaintiff's moving brief, Plaintiff was given these examinations while in custody on January 12, 2012 and January 30, 2012, after he had already been incarcerated for four months as a result of his arrest on September 20, 2011 and the resulting prosecution at issue in this case, and his mental state during those examinations resulted in significant part from the stress and misery of his being unjustly imprisoned and charged with robbery based on the very incident at issue in this case[1]. Dr. Raines does

---

[1] The same issue of timing and the stress of the incarcerative circumstances applies, of course, to the records from Plaintiff's involuntary commitment at the Kirby Forensic Psychiatric Institute from February 2012 through September 2012 (that Dr. Raines also relied upon), when he was for that period of time deemed to be unable to assist in his own defense during the course of his prosecution. Defendants' arguments concerning this issue on page 14 of their opposition brief are red herrings. Plaintiff never argued that his mental breakdown after four months at Rikers Island was the cause of his hallucinations (which pre-dated the incident). His pre-incident hallucinations are one thing, and his mental breakdown as a result of the stress and misery of being incarcerated for month after month at Rikers and facing false robbery charges is another thing.

4

not mention either the timing or the stress of the incarcerative circumstances of these evaluations at all in his amended report. There is also no indication that either of Dr. Gordon or Dr. Saraiya themselves had any special training or expertise in the evaluation of persons of foreign cultures. As just one example as to why this creates unreliability, on page 4 of Dr. Gordon's report (Ex. B to the Kuruvilla Decl.) he states that "[Plaintiff] reports … that he was ███████████████████ ███." But Plaintiff explained at his deposition (253:8-254:19)[2] that this is not what he said, and that it appeared that Dr. Gordon did not comprehend what he was saying about the culture he was born and raised in:

> Q. There was a reference in some of the material provided by your attorney that you had been ███████████████████████████. Do you recall that?
> …
> A. No.
> Q. (By Mr. Lawrence) You have no idea what that refers to?
> A. I do know what it refers to.
> Q. Could you please explain to me what it refers to?
> A. No.
> Q. I'm not asking whether you want to or not. You've testified that you know what it refers to, and I want you to explain to me what it refers to.
> …
> A. It was regarding a question that was asked of me by a psychologist relating to the environment that I was coming from. And it's an environment which includes, amongst other things, ███████████████████████████ ███████████████ So when this was said, it was to say that I was coming from that kind of environment, where it was ███████████████████████████, but this was never to say that I had ever ███████████.
> Q. (By Mr. Lawrence) Are you the ████████?
> A. No.
> Q. All right. So am I correct to understand that you had ███████████████ ███████████████?
> …
> A. Yes.
> Q. (By Mr. Lawrence) Last question on the subject: Were these ████████ frequent?

---

[2] These further excerpts from Plaintiff's deposition are annexed as Exhibit 10 to the June 13, 2016 Supplemental Rothman Decl.

5

A. No.

Defendants argue that Dr. Raines' failure to interview Plaintiff in conjunction with rendering his diagnoses and opinions comported with acceptable standards of psychiatric practice, but they cite to nothing to support that conclusory statement, and that conclusory statement is entirely contrary to the wealth of authorities from within the fields of psychiatry and psychology that were cited to in Plaintiff's moving brief and annexed to the Rothman Declaration.

The cases Defendants cite to on pages 6-8 of their opposition brief also do not assist them. The issue of whether the forensic psychiatrist employed by the government on appeal in Nicks v. United States, 955 F.2d 161, 165 (2d Cir. 1992) should have conducted a personal examination of the criminal defendant petitioner was simply not addressed by the Court in that case. There is also no clear indication one way or the other as to whether a personal examination was in fact conducted by that forensic psychiatrist in conjunction with his document review; and if a personal evaluation was not held (which may also be due in whole or part to the fact that the case was in an appellate procedural posture on a writ of *corum nobis* at that point), it also appears that none of the parties even raised this as an issue for the Court's consideration. Nicks simply has nothing of value to impart to the Court's consideration of the instant application.

Similarly, in Capellupo v. Nassau Health Care Corp., 2009 U.S. Dist. LEXIS 50523, (E.D.N.Y. June 16, 2009), there was no motion made by the plaintiff concerning the issue of the need for a personal examination of the plaintiff by the defendants' expert witness in that case - which centered around the issue of whether the defendant psychiatrists who civilly committed the

plaintiff acted according to generally accepted medical standards[3] – and the Court did not issue any holding on that issue because that issue was not presented to the Court in that case. Rather, the defendants in that case attacked the propriety of the plaintiff's expert witness (which the Court held to be infirm and inadmissible on several grounds not relevant here). As with Nicks, the Capellupo case similarly has nothing of value to impart to the Court's consideration of the instant application.

Dr. Raines' limited review of the record in this case also fatally undermines the reliability of his amended report. He may have reviewed a lot of pages of material, but there was much more

---

[3] This was thus a species of medical malpractice case, as to which the American Academy of Psychiatry and Law, "Ethics Guidelines for the Practice of Forensic Psychiatry" (Adopted May, 2005), in the Commentary to Section IV. Honesty and Striving for Objectivity, states that a personal examination is not required. Defendants on page 9 of their opposition brief cite to this in isolation to argue that in the circumstance at bar – where a diagnosis is being made and the expert witness is opining as to Plaintiff's credibility, his motive for monetary gain, and the reliability of Plaintiff's recounting of his personal memories of what happened in the Best Buy store on the date of the incident – the failure to conduct a personal examination was appropriate, and ignore the surrounding vital text in this section:

> Honesty, objectivity and the adequacy of the clinical evaluation may be called into question when an expert opinion is offered without a personal examination. For certain evaluations (such as record reviews for malpractice cases), a personal examination is not required. In all other forensic evaluations, if, after appropriate effort, it is not feasible to conduct a personal examination, an opinion may nonetheless be rendered on the basis of other information. Under these circumstances, it is the responsibility of psychiatrists to make earnest efforts to ensure that their statements, opinions and any reports or testimony based on those opinions, clearly state that there was no personal examination and note any resulting limitations to their opinions.

(emphasis added). As noted in Plaintiff's moving brief, there was nothing about the circumstances of this litigation that made it in any way infeasible for Dr. Raines to have conducted a personal examination of Plaintiff. Not only did he not do so, however, but both of his reports were entirely cocksure in every respect as to Plaintiff's supposed lack of credibility, motive for secondary gain, and his inability to accurately describe the events that occurred inside of the Best Buy store on the date of the incident. There is not a trace of effort made by Dr. Raines in either the original report or the amended report to "make earnest efforts to ensure that [his] statements, opinions and any reports or testimony based on those opinions, clearly state that there was no personal examination and note any resulting limitations to [his] opinions."

7

that he did not review[4], that would have to be evaluated in order to determine whether it was likely that Plaintiff was giving a reliable or an unreliable narrative of what happened on the date of the incident. This is what the jury will properly do, after receiving relevant evidence from both sides at trial. Defendants are seeking to rig the proceedings, however, and have a psychiatrist render diagnoses and tell the jury with his "expert" imprimatur (based upon a highly limited, selective, and distorted review of the record materials, and having never personally examined Plaintiff) that Plaintiff's recounting is not reliable, and that he is deceptive and motivated by greed. This the Court, as gatekeeper, cannot allow.

Defendants will be able to question Plaintiff at trial about the ▉▉▉▉▉▉ he has experienced in his life, and about ▉▉▉▉▉▉▉▉▉▉▉▉▉, and his ▉▉▉▉▉▉▉▉▉▉▉, and the parties will make their arguments to the jury based upon that and all the other evidence in this case. For the reasons given herein and in Plaintiff's moving papers, however, Dr. Raines' amended report is plainly unreliable and highly prejudicial, and cannot contribute constructively to the jury's task at trial.

---

[4] Dr. Raines, for example, did not review any of the numerous Defendants' various testimonies and written statements, which conflict with each other materially in numerous respects, and which show that the Defendants both spoliated and fabricated vital evidence. One can argue (and the parties will) as to whether there should be sanctions attendant to this spoliation and fabrication, but it is undisputed that the various Defendants in this case either destroyed or failed to preserve important evidence, and fabricated other important evidence. If the Defendants' numerous prevarications and contradictions, and spoliation and fabrication of evidence, were reviewed, a reasonable psychiatrist might consider that as evidence suggesting that perhaps Plaintiff was in fact recounting a reliable narrative. As also noted previously in Plaintiff's moving brief, Dr. Raines also did not consider (which would have known had he reviewed the transcript of Plaintiff's criminal trial, which he did not) that the transcript of Plaintiff's criminal trial indicates that Mr. Tchatat had, on the eve of his trial, rejected a plea offer to a misdemeanor with a sentence of time served - and took the risk of a mandatory minimum seven year prison sentence if he had been found guilty of the robbery charges - in order to go to trial rather than plead guilty to something that he did not do.

As to the particular examples of cherry-picking and misrepresentation that Defendants attempt to rebut at pages 12, *et seq.* of their opposition brief, all have been addressed in Plaintiff's moving brief, and Defendants arguments are all red-herrings. Plaintiff never argued that he had not ███████████████████████████████████████████ But Plaintiff's moving brief demonstrated how Dr. Raines cherry-picked only the information concerning Plaintiff's ████████ ████████, and his "pain level"[5] at the emergency room[6], that most helped Defendants and supported Dr. Raines' own theses, and ignored those facts that were helpful to Plaintiff and undercut his own theses. He thereby misrepresented and distorted the facts, which further demonstrates the unreliability of his report *en toto*.

Lastly, Plaintiff's argument does not "assume[ ] that Dr. Raines' report is unreliable unless he adopts and credits Plaintiff's version of events." Dr. Raines does have to, however - if he is to render an opinion that Plaintiff's version of events should not be credited that has even a wisp of reliability to it - at least consider the many facts that support the accuracy of Plaintiff's narrative. This he most certainly did not do. Dr. Raines' cherry-picking of Defendant-favorable facts, and

---

[5] The notation of "Pain Scale: 0/10: None" on Bates No. 136 that opposing counsel references was made at the time of discharge from the emergency room, after Plaintiff had received pain medication, which made the pain go away. Opposing counsel does not discuss why Dr. Raines only mentioned the "None" and not also the fact that Plaintiff is noted throughout these records as complaining of "back pain" (on Bates Nos. 134, 210, and 212) and "pleuritic pain" (on Bates Nos. 136 and 212) and that he was "kicked in the back and left leg and now has pain … [and] Patient says pain is worse with deep inspiration" (Bates No. 210) and the records note that he received pain medication in the form of Motrin (Ibuprofin) (on Bates No. 135) and that on a "pain assessment" given by Marvin Friedman, RN, Plaintiff reported / was assessed "Pain Scale: 5/10."

[6] As pointed out in Plaintiff's moving brief, Dr. Raines also ignored those entries in the emergency room records from the date of the incident that stated that Plaintiff "speaks in full sentences" and the doctor's notation that that "[t]he history is limited by nothing – patient appears as a reliable historian."

9

ignoring of all Plaintiff-favorable facts, is the very essence of unreliability. His report has nothing whatsoever to do with psychiatric science or employing reliable methodologies – it is simply argument dressed up in a psychiatric veneer.

## CONCLUSION

For the foregoing reasons, and those given in Plaintiff's moving papers, Plaintiff respectfully asks this Court to preclude Defendants from relying upon Dr. Raines' amended expert report.


Dated:    New York, New York
          June 3, 2016

                                                  /S/ Jeffrey A. Rothman
                                                  JEFFREY A. ROTHMAN, Esq.
                                                  315 Broadway, Suite 200
                                                  New York, New York 10007
                                                  (212) 227-2980