UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSIAS TCHATAT,                                          :

                                                     :        OPINION AND ORDER
                 Plaintiff,                                14 Civ. 2385 (LGS) (GWG)
                                                   :

   -v.-
                                                   :
CITY OF NEW YORK, et al.,
                                                   :

                Defendants.                   :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Josias Tchatat brought this case against a number of defendants pursuant to 42 U.S.C. § 1983 and various other provisions relating to his arrest for shoplifting. At this point in the case, the only named defendants that remain are the City of New York and police officers Liam O'Hara and Harry Arocho. As summarized in a prior decision in this case, Tchatat alleges that he was improperly detained at a Best Buy store for shoplifting, that he was then arrested by the defendant officers and prosecuted, and that he was ultimately acquitted at trial. See Tchatat v. City of N.Y., 2015 WL 5091197, at *3, reconsideration granted in part, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015). The governing complaint makes claims of false arrest, malicious prosecution, as well as other constitutional and state law claims against the police officers. Amended Complaint, filed Sept. 10, 2014 (Docket # 110).

      As part of the discovery process, the defendants submitted an expert report authored by Jonathan M. Raines, M.D. Tchatat now moves to preclude the report its entirety.[1] For the

---

[1] See Notice of Motion, filed Apr. 20, 2016 (Docket # 273); Plaintiff's Memorandum of Law in Support of Motion to Preclude the Amended Expert Report of Dr. Jonathan M. Raines and for Relief under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), filed Apr. 20, 2016 (Docket # 274) ("P. Mem."); Declaration of Jeffrey A. Rothman, filed Apr. 20, 2016 (Docket # 275) ("Rothman Decl."); Memorandum of Law in Opposition to Plaintiff's Motion to

reasons described below, Tchatat's motion is granted.

I. PROCEDURAL BACKGROUND

On November 23, 2015, the defendants served the plaintiff with an expert report by a psychiatrist named Dr. Jonathan M. Raines, M.D.  See The Defendants' Expert Disclosure, dated Nov. 23, 2015, appended as Exhibit 1 to Rothman Decl.  The plaintiff requested permission to make a motion striking the report.  See Letter from Jeffrey A. Rothman, filed Dec. 3, 2015 (Docket # 238), at 1.  He also sought to delay his deadline for filing a rebuttal report until after the motion to preclude was decided.  Id. at 3.  The Court granted both requests.  See Order, filed Dec. 9, 2015 (Docket # 243).

Shortly thereafter, the defendants then served an amended report, also authored by Dr. Raines.  See Letter from Peter J. Biging to Jeff A. Rothman, dated Dec. 22, 2015, appended as Exhibit 2 to Rothman Decl. ("Amended Report").  The plaintiff objected to the Amended Report on the ground that it was untimely, Letter from Jeffrey A. Rothman, filed Dec. 29, 2015, an objection that was overruled, see Text Only Order, filed Dec. 31, 2015 (Docket # 247).  This motion followed.  Because only the Amended Report is at issue in this motion, we do not discuss the original report.

---

Preclude the Amended Expert Report of Jonathan Raines, M.D., filed May 31, 2016 (Docket # 285) ("D. Opp."); Declaration of Ben Kuruvilla in Support of Defendants' Opposition to Plaintiff's Motion to Preclude the Amended Expert Report of Jonathan M. Raines, M.D., filed May 31, 2016 (Docket # 286); Plaintiff's Reply Memorandum of Law in Further Support of Motion to Preclude the Amended Expert Report of Dr. Jonathan M. Raines and for Relief under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), filed June 15, 2016 (Docket # 288) ("Reply"); Supplemental Declaration of Jeffrey A. Rothman, filed June 15, 2016 (Docket # 289).

II. LAW GOVERNING ADMISSION OF EXPERT TESTIMONY

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule 702 standard incorporates the principles enunciated in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993), in which the Supreme Court held that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," and in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), in which the Supreme Court held that Daubert's general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge," id. at 141 (citing Fed. R. Evid. 702).

"One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting earlier version of Fed. R. Evid. 702); accord Nimely v. City of N.Y., 414 F.3d 381, 397 (2d Cir. 2005); In re Initial Pub. Offering Sec. Litig., 174 F. Supp. 2d 61, 68 (S.D.N.Y. 2001) ("As Rule 702's plain language shows, the opinion of an expert witness is only admissible if it (1) assists the trier of fact in (2) understanding the evidence or determining a disputed fact.") (emphasis in original). The requirement that expert testimony assist the trier of fact is "akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence [,][but] . . . goes beyond mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry."

3

Rezulin, 309 F. Supp. 2d at 540 (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.03[1] (Joseph M. McLaughlin ed., 2d ed. 1997)) (alterations in original).  As with all testimony, the expert's testimony not only must be relevant under Fed. R. Evid. 401, see, e.g., Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002), but is also subject to exclusion under Fed. R. Evid. 403 where its probative value is substantially outweighed by the danger of unfair prejudice or other factors, see, e.g., Nimely, 414 F.3d at 397.

Additionally, Rule 702 requires that expert testimony rest on knowledge that is more than "subjective belief or unsupported speculation."  See Atl. Specialty Ins. v. AE Outfitters Retail Co., 970 F. Supp. 2d 278, 291 (S.D.N.Y. 2013) (quoting Rezulin, 309 F. Supp. 2d at 543). Accordingly, expert testimony that is "speculative or conjectural" is inadmissible.  Id. at 289 (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (additional citation omitted)).  Similarly, expert opinions that are "conclusory" must be excluded.  See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (rejecting expert's conclusory statement where it was not accompanied by "any evidentiary citation" or any elaboration of the expert's reasoning).

The Second Circuit has instructed that there is a "presumption of admissibility of [expert] evidence" after Daubert.  Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995), cert. denied, 517 U.S. 1229 (1996).  Where there is "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method . . . an expert's opinion [is not] per se inadmissible." Amorgianos, 303 F.3d at 267.  "Disputes as to the strength of [an expert's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."  McCullock v. H.B.

4

Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995) (citation omitted).  However, the burden of proving the admissibility of expert evidence, as with all evidence, rests with the proponent — here, the defendants.  See, e.g., United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007), cert. denied, 552 U.S. 1224 (2008); Fed R. Evid. 702 Advisory Committee's note to 2000 Amendment ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a).  Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

III.  DISCUSSION

As an initial matter, we note that most of the Amended Report recounts factual information about Tchatat's personal life, medical history, his time in state custody related to the criminal charge underlying this case, his testimony at his deposition, and the diagnoses of psychiatrists who examined him while he was in custody.  See, e.g., Amended Report at 2-3.  "Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology.  Mere narration thus fails to fulfill Daubert's most basic requirements."  Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) (citation omitted); see also id. (collecting cases).

Taken on its own, this recitation of evidence in the case would not be admissible.  See Fed. R. Evid. 403 (court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence").  We thus home in on the opinion portion of the report.  In this portion, the report states, "[b]ased upon [Dr. Raines's] examination of the materials submitted for review, it appears that from approximately 2009 onward Mr. Tchatat suffered from Paranoid Schizophrenia."  Id. at 4.  The report

5

continues, "[t]his condition can manifest itself . . . in illogical, grandiose, and paranoid thinking, devoid of intact reality," and that "'some individuals with schizophrenia show social cognition deficits including deficits in the ability to infer the intentions of other people . . . [schizophrenics may] interpret irrelevant events . . . as meaningful, perhaps leading to the generation of explanatory delusions.'"  Id. (quoting Diagnostic and Statistical Manual of Mental Disorders 89, 101 (5th ed., text revision 2013) ("DSM-V")).

The report states that "Tchatat's history is also consistent with the coexistence of an Antisocial Personality Disorder," sufferers of which "'are frequently deceitful and manipulative in order to gain personal profit or pleasure . . . [t]hey may repeatedly lie, use an alias, con others, or malinger.'"  Id. at 5 (quoting DSM-V at 660).

Dr. Raines wrote that "[i]t is my opinion that the same disordered mental state . . . emanates from the depositions like an illuminated penumbra and therefore Mr. Tchatat's testimony was not rendered by an individual of sound mind."  Id.  The report concludes that Tchatat suffered from these conditions "at the time of the incident in question," and that Tchatat "was potentially subject to delusional thinking, which would have significant potential to impact his recollection of events during the time he was suffering from these disorders."  Id.

The plaintiff argues that the report should be excluded because (1) it "invades the province of the jury in opining on Plaintiff's credibility and on the ultimate issues in the case"; (2) it is "scientifically invalid and unreliable under Daubert," largely because Dr. Raines did not personally interview the plaintiff; and (3) it should be precluded under Fed. R. Evid. 403.  P. Mem. at 21.  Because either the second or the third grounds are sufficient to decide this motion, we do not reach the first ground.

6

A. Reliability

As noted, it is the burden of the defendants to show by a "preponderance of proof" that Dr. Raines's report satisfies Rule 702. Daubert, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)); accord Atl. Specialty Ins. v. AE Outfitters Retail Co., 970 F. Supp. 2d 278, 288 (S.D.N.Y. 2013). Here, the plaintiffs have made a cogent argument, supported by citations to practices in the psychiatric profession, that it is generally accepted practice in the field of psychiatry for a diagnosis to be made based on an examination of the individual being assessed. See P. Mem. at 9-14; DSM-V at 21, appended as Exhibit 3 to Rothman Decl.; Ethics Guidelines for the Practice of Forensic Psychiatry, American Academy of Psychiatry and Law (adopted May 2005), appended as Exhibit 4 to Rothman Decl., at 3-4. Indeed, court decisions involving psychological or psychiatric expert testimony typically recite that the testifying expert has personally interacted with the patient. See, e.g., United States v. Finley, 301 F.3d 1000, 1009 (9th Cir. 2002) ("proper psychological methodology and reasoning" included "observing [defendant's] behavior"); accord Qube Films Ltd. v. Padell, 2016 WL 888791, at *2 n.1 (S.D.N.Y. Mar. 1, 2016) (noting that a methodology "includ[ing] a medical history interview, patient observation, a physical examination, and administration of standard psychological tests" is "routinely accepted under Daubert.") (citations omitted); Schoolcraft v. City of N.Y., 2015 WL 6444620, at *2 (S.D.N.Y. Oct. 23, 2015) ("Because [psychologist] spent a significant amount of time analyzing multiple sources to assess Plaintiff and himself observed Plaintiff for an extended period of time, the Court finds [the opinion] . . . to be based on a reliable methodology."); Israel v. Spring Indus., Inc., 2006 WL 3196956, at *10 (E.D.N.Y. Nov. 3, 2006) (finding "personal interviews, a medical record review, clinical rating scales, and background facts" to be "the type of methodology employed to form a reliable psychiatric

7

opinion") (footnote and citations omitted).

Here, by contrast, it is uncontested that Dr. Raines did not examine the plaintiff. Instead, Dr. Raines's report is based only on his review of medical records, deposition testimony, and other documents relating to Tchatat. See Amended Report at 4. Neither Dr. Raines nor any other expert has provided any admissible evidence to this Court that a review exclusively of written records is an accepted method for making a psychiatric diagnosis of the kind Dr. Raines made here. The record is literally devoid of any admissible evidence whatsoever on this question. Certainly, Dr. Raines says nothing about the reliability of this methodology in his Amended Report. Thus, he does not discuss whether he typically uses this methodology in his professional practice, let alone whether such a practice is accepted the psychiatric profession. Cf., e.g., Cohalan v. Genie Indus., Inc., 2013 WL 829150, at *4 (S.D.N.Y. Mar. 1, 2013) (allowing expert evidence when vocational expert testified that she "used the same widely accepted peer reviewed methodology and intellectual rigor," including psychological interview, as she did in her regular employment) (internal quotation omitted); Discepolo v. Gorgone, 399 F. Supp. 2d 123, 127 (D. Conn. 2005) ("Plaintiff has demonstrated to the Court's satisfaction that Dr. Pratt's methodology for diagnosing PTSD . . . coupled with psychological testing, record review, and other interviewing, is a generally accepted methodology . . . .") (footnote omitted).

While it may be understandable that Dr. Raines did not explain the reliability of his methodology in his initial report, there is no justification for the fact that the defendants, when confronted in plaintiff's moving papers with this claimed defect in methodology, declined to offer any admissible evidence on the question. To be sure, defendants briefly attempt to justify the methodology, arguing that "records . . . about plaintiff's personal background, criminal history and his mental health history . . . provided ample information from which Dr. Raines

8

could formulate his opinion about plaintiff's mental health condition on September 20, 2011." D. Opp. at 6. This argument, however, is merely the statement of counsel. It is unaccompanied by any citation. Critically, there is no evidence that this is a reliable and accepted methodology employed by psychiatrists.[2]

This Court thus cannot make the finding required by Daubert that defendants have met their burden of proving that Dr. Raines's choice to forgo a patient interview reliably produced an accurate psychiatric diagnosis. See Daubert, 509 U.S. at 589 ("[T]he trial judge must ensure that any and all scientific testimony or evidence is not only relevant, but reliable."); accord Amorgianos, 303 F.3d at 267 ("To warrant admissibility . . . it is critical that an expert's analysis be reliable at every step."). Accordingly, the report must be precluded based on this failure of proof.

B.  Rule 403

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Even if we found Dr. Raines's report reliable, we would exclude it on the

---

[2] The defendants attempt to support Dr. Raines's methodology by citing two cases in which they argue a psychiatric expert's opinion was admitted even though the psychiatrist did not conduct an examination. D. Opp. at 6-7 (citing Nicks v. United States, 955 F.2d 161, 165 (2nd Cir. 1992) and Capellupo v. Nassau Health Care Corp., 2009 WL 1705749 (E.D.N.Y. June 16, 2009)). Both cases are irrelevant. The purpose of the report in Capellupo was to provide an evaluation of the standard of care provided to a patient, not to diagnose the patient. Capellupo, 2009 WL 1705749, at *9; see also Ethics Guidelines for the Practice of Forensic Psychiatry, American Academy of Psychiatry and Law (adopted May 2005), appended as Exhibit 4 to Rothman Decl., at 4 ("For certain evaluations (such as record reviews for malpractice cases), a personal examination is not required."). Nicks did not even involve a challenge to the admissibility of an expert report and thus made no ruling on the issue raised here.

ground that offers little to assist the jury regarding any issues in the case and the little it does offer is vastly outweighed by the potential that a jury would improperly use the expert opinion to completely discount the plaintiff's credibility.

Plaintiff concedes, as he must, that "[d]efendants will be able to question Plaintiff at trial about the hallucinations he has experienced in his life, and about their timing and frequency, and his history of mental illness." Reply at 8. The Court believes that much if not all of the documentary evidence summarized in Dr. Raines's report will be admissible at trial. Dr. Raines's opinions, however, are couched in the most general and tentative terms. He states only that it "appears" that Tchatat suffered from schizophrenia, that this condition "can" manifest itself in thinking that is divorced from reality, that "some individuals" with schizophrenia experience explanatory delusions, that Tchatat's history is "consistent with" a personality disorder in which the sufferer "may" repeatedly lie, and that Tchatat "potentially" was "subject to" delusional thinking. Amended Report at 4-5.

These tentative conclusions offer little in the way of probative evidence. What little value they have is far outweighed by the danger that the jury would accord too much weight to such opinions because they come from the mouth of a medical professional. The jury will have ample opportunity to learn about plaintiff's experiences with delusions and hallucinations from other evidence in the case, including many if not all of the very medical records, deposition testimony, and prison records that Dr. Raines examined.

Accordingly, the expert report must be precluded under Fed. R. Civ. P. 403.

IV. <u>CONCLUSION</u>

       For the foregoing reasons, the plaintiff's motion to preclude Dr. Raines's report (Docket # 273) is granted.

Dated: July 14, 2016
       New York, New York

                                                _____
                                                GABRIEL W. GORENSTEIN
                                                United States Magistrate Judge