0UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JOSIAS TCHATAT,                                    :
                                                   :     OPINION AND ORDER
                 Plaintiff,
                                                   :     14 Civ. 2385 (LGS) (GWG)
       -v.-
                                                   :
LIAM O'HARA, et al.,
                                                   :
                 Defendants.                       :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Josias Tchatat sued two police officers, Liam O'Hara and Harry Arocho, as well as other defendants, making claims arising out of Tchatat's arrest in 2011 at a Best Buy store and his prosecution following that arrest. All defendants other than Officers O'Hara and Arocho have settled or been dismissed. Now before the Court is Tchatat's motion for spoliation sanctions.[1] Tchatat seeks sanctions against Officers O'Hara and Arocho based on their alleged failure to preserve evidence relating to Tchatat's arrest, such as video surveillance from the Best Buy store and the merchandise Tchatat allegedly stole. Among other things, Tchatat argues that the police are on notice that any arrest may lead to a lawsuit, and thus have a duty to preserve evidence

---

[1] See Notice of Motion, filed Nov. 28, 2016 (Docket # 311); Memorandum of Law in Support of Plaintiff's Motion for Spoliation Sanctions, filed Nov. 28, 2016 (Docket # 312) ("Pl. Mem."); Declaration of Jeffrey A. Rothman, filed Nov. 28, 2016 (Docket # 313) ("1st Rothman Decl."); Memorandum of Law in Opposition to Plaintiff's Motion for Spoliation Sanctions, filed Feb. 1, 2017 (Docket # 324) ("Defs. Opp'n"); Declaration of Ben Kuruvilla in Support of Defendants' Oppostion [sic] to Plaintiff's Motion for Spoliation Sanctions, filed Feb. 1, 2017 (Docket # 325) ("Kuruvilla Decl."); Declaration of Jeffrey A. Rothman, filed Feb. 14, 2017 (Docket # 326); Reply Memorandum of Law in Support of Plaintiff's Motion for Spoliation Sanctions, filed Feb. 14, 2017 (Docket # 327) ("Pl. Reply"); Letter from Ben Kuruvilla, filed Feb. 22, 2017 (Docket # 330) ("Kuruvilla Letter").

relating to any arrest. For the reasons stated below, we reject this argument and note additional barriers to Tchatat's motion. Accordingly, the motion is denied.

I. BACKGROUND

According to the complaint, Tchatat was shopping at a Best Buy store in Manhattan on September 20, 2011, when he was detained by Best Buy personnel — either Best Buy employees or employees of a security firm working for Best Buy — under suspicion of shoplifting. Am. Compl. ¶¶ 23, 27-28. Best Buy personnel brought Tchatat to an in-store security office because they claimed Tchatat took an item for which he had not paid into the store's restroom. Id. ¶¶ 29-34. The Best Buy personnel suspected Tchatat of stealing the item, which they later determined was a memory card. Id. ¶¶ 28-29, 72.

Tchatat alleges that one Best Buy agent, Shwon Edmonds, attempted to handcuff him in the security office. See id. ¶¶ 36-37. After declining to be handcuffed, Tchatat claims that he "was attacked" by Best Buy personnel who "punched and kicked [him] repeatedly in the head, face, and body." Id. ¶¶ 37-39. The Best Buy personnel then "forcibly handcuffed [Tchatat]," and continued to kick Tchatat while accusing him of being a thief and shouting racial slurs against him. Id. ¶¶ 39-41.

The part of the complaint relating to the two remaining defendants, Officers O'Hara and Arocho, alleges that the officers arrived at the Best Buy after Tchatat was detained and beaten by the Best Buy personnel. See id. ¶¶ 55-57. These officers then spoke to the Best Buy personnel about what occurred, but ignored or dismissed any statements Tchatat put forth about what happened to him. Id. ¶¶ 56-57, 60-61. O'Hara took photos of injuries sustained by Edmonds, but not of any injuries sustained by Tchatat. Id. ¶¶ 58-59. The officers did not arrest any of the Best Buy personnel for the assault against Tchatat and did not review any in-store video

surveillance related to the incident. Id. ¶¶ 62-65. In fact, Tchatat states that the officers never saw any video of the incident. See id. ¶ 63. The officers then arrested Tchatat, took him to a hospital, and later processed his arrest at their precinct. See id. ¶¶ 66-70.

Tchatat was initially charged with petit larceny, criminal mischief, and attempted assault. Id. ¶ 71. The complaint in this case recounts the allegations in the criminal court complaint against Tchatat, which was attested to by O'Hara. Id. ¶ 72. The criminal court complaint stated that the memory card Tchatat allegedly stole was "recovered" and that Tchatat broke Edmonds' eyeglasses when Tchatat struck Edmonds. Id. Tchatat was later indicted for robbery in the second and third degrees. See id. ¶ 81. On April 5, 2013, after a jury trial, Tchatat was acquitted on all counts. Id. ¶ 86.

Edmonds gave a different account of what occurred in the security office. According to Edmonds, while the Best Buy personnel and Tchatat were in the security office, a Best Buy person left to call the police. See Deposition of Shwon Edmonds, dated Nov. 24, 2015 (attached as Ex. C to Kuruvilla Decl.) ("Edmonds Dep."), 191:5-8; accord Am. Compl. ¶ 35. After that person left, Edmonds asked if he could search Tchatat's pockets. Edmonds Dep. 191:5-8. Edmonds testified that at this point Tchatat "started head-butting" him. Id. 191:7-12. The Best Buy personnel then tried to restrain Tchatat to stop him from "coming at [Edmonds] with his head," and pulled Tchatat to the floor to defend Edmonds. See id. 191:13-25.

It is undisputed that defendants O'Hara and Arocho arrived after Tchatat was detained and did not witness the alleged theft or what occurred between Tchatat and the Best Buy personnel before Tchatat was handcuffed. See Deposition of Josias Tchatat, dated Oct. 21, 2015 (attached as Revised Ex. B to Kuruvilla Letter), 203:8-9, 204:3-22; Deposition of Liam O'Hara (attached as Ex. 3 to 1st Rothman Decl.) ("O'Hara Dep."), 77:9-78:2; see also Am. Compl.

3

¶¶ 55-57; Pl. Mem. at 2. Officer O'Hara testified that when he arrived at the Best Buy, security personnel told him that Tchatat "attempted to take property from the store without paying for it," and that when security attempted to stop Tchatat, "an assault took place and [Tchatat] assaulted one or more" of the Best Buy personnel. See O'Hara Dep. 71:24-72:14, 73:5-27, 77:9-78:2; see also Edmonds Dep. 254:5-18 (stating that Edmonds told the police about Tchatat's assault on him).

Officer O'Hara used his personal cell phone to photograph the injuries to Edmonds' face, O'Hara Dep. 85:10-16, 127:14-20, but later lost the phone sometime before Tchatat's criminal trial, see Trial Testimony (attached as Ex. 2 to 1st Rothman Decl.) ("Tr."), 78:8-79:11, 83:12-24; accord Defs. Opp'n at 18. Edmonds' glasses were allegedly damaged in the incident with Tchatat, but O'Hara did not take them as evidence. O'Hara Dep. 99:17-100:22. The prisoner pedigree card related to Tchatat's arrest indicated that there was an "inj. photo," see Prisoner Pedigree Card, dated Sept. 22, 2011 (attached as Ex. 11 to 1st Rothman Decl.), but O'Hara could not remember if "inj." meant injury or if there was ever a copy of the photo of Edmonds' injuries other than the one on O'Hara's phone, see O'Hara Dep. 159:20-160:20. O'Hara was uncertain whether he ever attempted to forward the photo on the phone to the prosecuting Assistant District Attorney handling the case and could not remember if he spoke to anybody at the District Attorney's office before giving testimony at Tchatat's criminal trial. O'Hara Dep. 23:8-25.

In detaining Tchatat, the Best Buy personnel apparently recovered the memory card packaging Tchatat allegedly stole and gave it to O'Hara as evidence. See Tr. 97:11-18; O'Hara Dep. 103:6-22. It is unclear whether O'Hara received merely packaging that at one time contained a memory card or packaging that still contained a memory card. See generally Tr.

4

80:20-25, 81:16-82:17; O'Hara Dep. 103:23-104:7, 106:13-107:6, 107:18-108:13. O'Hara took a photo of the packaging at his precinct, see Tr. 79:12-80:25, and then returned the package to the Best Buy, O'Hara Dep. 105:12-108:13. O'Hara gave the original photograph of the packaging to the Assistant District Attorney handling Tchatat's criminal prosecution. Tr. 81:16-20. All that now remains is a photocopy of the photograph. See O'Hara Dep. 15:16-21, 104:12-25; Photograph, undated (attached as Ex. 4 to 1st Rothman Decl.).

The Best Buy store at one time had a video surveillance system. See Trial Testimony (attached as Ex. 8 to 1st Rothman Decl.) ("2d Tr."), 295:4-296:3, 311:4-312:21; see also Incident Report, undated (attached as Ex. 13 to 1st Rothman Decl.). However, there were no cameras in the security office where Tchatat alleges Best Buy personnel beat him, see Deposition of Brian Farrell, dated Oct. 28, 2015 (attached as Ex. E to Kuruvilla Decl.), 41:8-23, nor in the bathroom where Best Buy employees accused Tchatat of secreting the memory card, see 2d Tr. 311:4-17. Officer O'Hara did not ask to see any other video surveillance footage (such as video of the shopping area of the store) and could not recall any conversations about preserving video evidence at the Best Buy store on the date of the incident. O'Hara Dep. 86:7-16. At the time of his deposition, Officer O'Hara did not know where any of the video evidence might be, if it existed at all. Id. 230:2-6.

II. LAW GOVERNING MOTIONS FOR SPOLIATION SANCTIONS

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted) (quoting Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007)). A party seeking sanctions for spoliation has the burden of

5

establishing the elements of a spoliation claim. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted); accord John Wiley & Sons v. Book Dog Books, LLC, 2015 WL 5769943, at *6 (S.D.N.Y. Oct. 2, 2015) (citations omitted). These elements are "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted) (quoting Residential Funding, 306 F.3d at 107).[2]

With respect to the third element, a court should not "hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence" because to do so "would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction." See Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998). Nonetheless, where merely negligent conduct is shown, the party requesting spoliation sanctions must "adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged" by that party. See Residential Funding, 306 F.3d at 109 (citations, internal quotation marks, and brackets omitted); accord Michael v. Gen. Motors Co., 2016 WL 3440551, at *4 (S.D.N.Y. June 14, 2016). This relevance standard is

---

[2] Federal Rule of Civil Procedure 37(e) contains a provision that governs the failure to preserve "electronically stored information." The only possible evidence that might qualify as "electronically stored information" is the videotape evidence and the photographs of Edmonds. Neither party has argued that Rule 37(e) applies here. Accordingly, we do not consider Rule 37(e) further. In any event, our ruling would be the same even if Rule 37(e) applied.

6

more demanding than the standard under Federal Rule of Evidence 401. Residential Funding, 306 F.3d at 108-09; accord Michael, 2016 WL 3440551, at *4. If bad faith is proven, relevance may be presumed from the fact of the evidence's destruction. See Residential Funding, 306 F.3d at 109 (citation omitted); accord Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

The decision of what type of sanction is appropriate in a given case is left to the sound discretion of the district court. See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 780 (2d Cir. 1999); accord Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); Deanda v. Hicks, 137 F. Supp. 3d 543, 554 (S.D.N.Y. 2015). Any sanction imposed by a court should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." West, 167 F.3d at 779 (citations and internal quotation marks omitted); accord In re Terrorist Bombings, 552 F.3d at 149. Additionally, "[i]t is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include — from least harsh to most harsh — further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal." Dorchester Fin. Holdings Corp. v. Banco BRJ S.A., 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (citation and internal quotation marks omitted).

Here, Tchatat requests (1) to strike O'Hara and Arocho's answer; (2) a mandatory adverse inference instruction; or (3) a permissive adverse inference instruction. Pl. Mem. at 22-23.

III. DISCUSSION

Tchatat's motion for spoliation sanctions argues that Officers O'Hara and Arocho improperly failed to preserve (1) the photograph O'Hara took of Edmonds; (2) Edmonds' eyeglasses, which were purportedly broken; (3) the memory card packaging and the memory card itself; (4) the original photo of the packaging; and (5) in-store video surveillance from the day of the incident. See Pl. Mem. at 1, 22.

We begin by noting that this Opinion and Order is not intended to rule on the relevance or admissibility of any evidence, including evidence regarding the effort (or lack of effort) that the officers made to preserve the items at issue in this motion. In addition, this Opinion and Order is not a ruling as to the availability of a permissive adverse-inference instruction at trial to the extent the elements of spoliation have not been met. As the Second Circuit has made clear, a permissive adverse-inference instruction — one of the sanctions requested by Tchatat — is not necessarily a sanction and may be given to a jury in situations where the elements of spoliation are not met. See Mali v. Fed. Ins. Co., 720 F.3d 387, 391-94 (2d Cir. 2013); accord Singh v. Penske Truck Leasing Co., 2015 WL 802994, at *7 (S.D.N.Y. Feb. 26, 2015); Klipsch Grp. v. Big Box Store Ltd., 2014 WL 904595, at *4 (S.D.N.Y. Mar. 4, 2014). Whether a permissive adverse-inference instruction is granted at trial may be based on factors and evidentiary support different from those required to be weighed by this Court in adjudicating the request for spoliation sanctions. Thus, we do not opine on whether Tchatat is entitled to such an instruction.

To meet the first element of spoliation, plaintiff must show that defendants "had an obligation to preserve [the evidence] at the time it was destroyed." Chin, 685 F.3d at 162 (citation omitted). "Identifying the boundaries of the duty to preserve [evidence] involves two

8

related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" Zubulake, 220 F.R.D. at 216 (emphasis omitted). In the usual situation, "[t]he obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu, 247 F.3d at 436 (citation omitted); accord R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 23 (S.D.N.Y. 2010); Scalera v. Electrograph Sys., Inc., 262 F.R.D. 162, 171 (E.D.N.Y. 2009); Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008). Thus, the duty to preserve evidence arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Kronisch, 150 F.3d at 126-27 (citations omitted); accord In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 105 (2d Cir. 2016). A determination of "when the duty to preserve evidence arises may, under certain circumstances, be dependent upon the nature of the evidence." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009).

Here, there was no suit filed against the defendants at the time the evidence at issue was allegedly lost. Nor has plaintiff pointed to any evidence that Officers O'Hara and Arocho had any reason to believe that Tchatat would file suit against them. Thus, the situation here was not similar to those in which litigation commonly arises and is therefore expected — such as where a discrimination charge is filed against an employer, see, e.g., Adorno v. Port Auth. of N.Y. & N.J., 258 F.R.D. 217, 228 (S.D.N.Y. 2009) (employer's duty to preserve arose at the time it received discrimination complaint), or where a landowner learns that an invitee has been injured on its property, see, e.g., Quraishi v. Port Auth. of N.Y. & N.J., 2015 WL 3815011, at *5

9

(S.D.N.Y. June 18, 2015) ("[C]ourts have consistently found defendants put on notice by a serious accident or injury occurring on their premises.") (citations omitted).

The only cases Tchatat cites in support of his contention that the arrest itself imposed on defendants a duty to preserve any evidence in this case, see Pl. Mem. at 15-16; Pl. Reply at 8, 12, do not support his argument. Manganiello v. City of New York, 612 F.3d 149 (2d Cir. 2010), did not involve an effort to obtain a spoliation sanction — indeed, the term "spoliation" appears nowhere in the opinion — but rather concerned whether the trial court had improperly given a permissive adverse inference instruction. Id. at 166-67. As already discussed, a permissive adverse inference instruction is not necessarily a sanction. In any event, the defendant in Manganiello had "admitted at trial that it was his responsibility to preserve the evidence until the time of trial." Id. at 166. Here, there is no such concession.

Another case cited, DeMeo v. Kean, 754 F. Supp. 2d 435 (N.D.N.Y. 2010), is also not on point. In that case the evidence in question — private video surveillance footage — was the subject of a state-court preservation order at the time of its destruction, and thus DeMeo found that there was a duty to preserve it. Id. at 448-49. Notably, the police officer in DeMeo knew that video surveillance existed, actually saw the video, and repeatedly viewed the video before allegedly destroying it. Id. at 440-41, 447-48.

The remaining case, Taylor v. City of New York, 293 F.R.D. 601 (S.D.N.Y. 2013), involved the beating of an inmate, the plaintiff, by other inmates that resulted in the plaintiff's being hospitalized with a broken jaw. Id. at 605-06, 610. The record evidence was that the Department of Corrections knew that litigation "invariably ensued" from such assaults on inmates in Department of Corrections custody. Id. at 608, 610.

Perhaps recognizing that no case law supports the notion that an arrest invariably triggers a duty to preserve evidence of the arrest for potential civil litigation, Tchatat asserts that "[e]very member of the NYPD is of course aware that a large number of lawsuits are filed by arrestees stemming from their arrests and prosecutions each year." Pl. Mem. at 16-17. The only citation for this proposition is a newspaper article stating that there were 9,570 claims against the NYPD in New York City in the year 2012. Id. (citing Rocco Parascandola & Tina Moore, Cop Union Chief Wants City to Adopt No-Settlement Policy, N.Y. Daily News, http://www.nydailynews.com/new-york/union-chief-city-adopt-no-settle-policy-article-1.1956680). Contrary to Tchatat's contention, the article does not say those claims were based exclusively on arrests. In any event, what is missing from Tchatat's argument is the total number of arrests made by the NYPD in 2012. Without this information, it is impossible to conclude from Tchatat's statsitic that a lawsuit will commonly follow from an arrest. Thus, we cannot find that it is "reasonably foreseeable," In re Terrorist Bombings, 552 F.3d at 148 (citation omitted), to a police officer that an arrest will result in a lawsuit against him or her. See, e.g., Reiff v. Marks, 511 F. App'x 220, 222, 224 (3d Cir. 2013) (where stun gun was used four times against arrestee during traffic stop, no duty to preserve stun gun arose).[3]

---

[3] For what it is worth, public reports show that the total number of arrests in New York City in 2012 was 397,166. See Civilian Complaint Review Board, 2012 Annual Report 5 n.1 (2013), available at http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf. Thus, even if we assumed that the 9,570 claims in 2012 were based exclusively on these arrests, this would mean that fewer than 2.5% of arrests result in a claim against the NYPD. Such a low proportion of claims or lawsuits could not create a duty to preserve. In fact, claims may result from contact other than arrests, such as from the issuance of summonses or other encounters. The number of summonses in 2012 was 476,361. Id. The number of reports of "stop-and-frisk" encounters in 2012 was 532,911. Id. If these categories were included in the base, the proportion of arrests that result in claims would be far lower.

Tchatat goes on, however, to make the argument that, for purposes of determining the duty to preserve in a spoliation analysis, "the anticipated litigation need not even be the same litigation in which the spoliation sanctions are sought." Pl. Mem. at 15. In other words, he seeks to graft onto the spoliation analysis in his civil litigation whatever obligation to preserve evidence existed in the criminal case against him. His only citation for the assertion that the duty to preserve can relate to an entirely different litigation, however, is Manganiello, and as we have already noted, Manganiello was not reviewing a spoliation sanction but rather a permissive adverse inference instruction.

But even if we were to accept Tchatat's invitation to consider the obligation in Tchatat's criminal case, we would not find that Officers O'Hara and Arocho could be subject to a spoliation sanction. Tchatat asserts without citation that the defendants had an "obvious" duty "to preserve relevant evidence concerning the alleged robbery." See Pl. Reply at 7. In fact, there is no free-floating obligation to preserve evidence in a criminal prosecution and Tchatat cites to no case that so holds. Obviously, there are potentially serious consequences to the viability of the prosecution if relevant evidence is lost. But the court-imposed obligation is only to make available evidence favorable to the accused, see Brady v. Maryland, 373 U.S. 83, 86-87 (1963), and thus, obviously, to preserve it, see, e.g., Grega v. Pettengill, 123 F. Supp. 3d 517, 537 (D. Vt. 2015) (citing Brady, 373 U.S. at 87). The Brady obligation applies to evidence that is actually favorable to the accused, not to "preliminary, challenged, or speculative information." United States v. Agurs, 427 U.S. 97, 109 n.16 (1976) (citation omitted); accord United States v. Amiel, 95 F.3d 135, 145 (2d Cir. 1996); United States v. Erbo, 2006 WL 2165739, at *3 (S.D.N.Y. July 31, 2006). In Arizona v. Youngblood, 488 U.S. 51 (1988), the Supreme Court

12

specifically refused to "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." See id. at 58. It expanded the Brady obligation only to the extent of holding that a criminal defendant could show a due process violation if the defendant proved that the police acted with "bad faith" in failing to preserve "potentially useful evidence." Id. Case law is equally clear that any obligation to preserve evidence applies only to evidence that is in the government's possession. See, e.g., United States v. Tillem, 906 F.2d 814, 824 (2d Cir. 1990) (the "government is not required to disclose evidence it does not possess or of which it is not aware") (citing Morgan v. Salamack, 735 F.2d 354, 358 (2d Cir. 1984)); accord Jacob v. United States, 1998 WL 391494, at *1 (2d Cir. Apr. 20, 1998) (summary order); Neil v. Walsh, 2009 WL 382637, at *5 (S.D.N.Y. Feb. 17, 2009); Smith v. Edwards, 2000 WL 709005, at *6 (S.D.N.Y. May 31, 2000).

Here, even if we were to import the Brady and related obligations arising from criminal prosecutions into the spoliation analysis, we would not conclude that any purported violation of this duty would justify spoliation sanctions. The Brady obligation only requires disclosures for use "at trial." United States v. Coppa, 267 F.3d 132, 135, 142 (2d Cir. 2001). Here, Tchatat was acquitted on April 5, 2013, Am. Compl. ¶ 86, almost a year before this lawsuit was filed on April 4, 2014. Tchatat has pointed to no reason for Officers O'Hara and Arocho — or, indeed, anyone else — to have believed at the time of acquittal that they would have been required to preserve the evidence. Because any purported preservation obligation was extinguished on acquittal, long before this action was brought, no spoliation sanction can issue.[4]

---

[4] We also question whether plaintiff has shown that any obligation could be imposed on each of the individual police officer defendants in this case inasmuch as the Brady and related

13

Finally, even if we were to ignore the extinguishment of any purported preservation obligation, we could not make a finding on the current record that the evidence in question was exculpatory or that the police officers acted in bad faith as described in Youngblood, which would be a prerequisite to finding any duty to preserve. Nor could we find that the other elements of spoliation — culpability and relevance — are met. Importantly, the burden is on Tchatat to prove the elements of a spoliation claim by a preponderance of the evidence. See, e.g., McIntosh v. United States, 2016 WL 1274585, at *33 (S.D.N.Y. Mar. 31, 2016) (quoting Dilworth v. Goldberg, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014)). While Tchatat has put forth arguments that the particular items of evidence would have been exculpatory — or that they were relevant and destroyed with a culpable state of mind — Tchatat's proof is either speculative or controverted. To the extent it is speculative, the request for a sanction must be denied as Tchatat cannot meet his burden of proof through speculation. See Khaldei v. Kaspiev, 961 F. Supp. 2d 564, 570 (S.D.N.Y.), aff'd, 961 F. Supp. 2d 572 (S.D.N.Y. 2013) ("[B]ecause plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for

---

obligations are imposed on the prosecuting authority, not individuals. See, e.g., Giglio v. United States, 405 U.S. 150, 154 (1972) (imposing Brady obligation on "[t]he prosecutor's office"). In a section 1983 action, by contrast, a police officer is being sued only in his individual or personal capacity, and "[a] suit against an individual in his personal capacity is not a suit against the governmental entity." See, e.g., Lore v. City of Syracuse, 670 F.3d 127, 164 (2d Cir. 2012) (citation omitted). Thus, case law has recognized the principle that individual law enforcement officers do not necessarily have a duty to preserve evidence. See Holloway v. Dep't of Corr., 2013 WL 628648, at *6 (D. Conn. Feb. 20, 2013) ("[T]he fact that the video tape was not preserved without more is insufficient to establish that any particular defendant had both control over and a duty to preserve the video tape at the time it was destroyed much less a culpable state of mind."); Deanda, 137 F. Supp. 3d at 556 ("It is at the very least unclear, then, that [the arresting officer], as opposed to another person, department, or entity such as the district attorney or Westchester County, had a duty to preserve the video/audio recording.").

spoliation sanctions.") (citation omitted). To the extent Tchatat's claims rely on one of several competing inferences from the evidence — for example, his proposed inference that defendants deliberately destroyed or withheld evidence, see Pl. Reply at 2-3 (citing Opinion and Order, filed Aug. 28, 2015 (Docket # 206), at 10-12) — this means there is a disputed issue of fact, and the question of whether a sanction will issue would have to await trial. See, e.g., Castellani v. City of Atlantic City, 2016 WL 7155826, at *4 (D.N.J. Sept. 15, 2016) (refusing to issue spoliation sanction where there was a "factual dispute as to whether the document [at issue] ever existed"); Thermotek, Inc. v. Orthoflex, Inc., 2015 WL 4138722, at *12 (N.D. Tex. July 7, 2015) (denying without prejudice a motion for spoliation sanctions where "disputed fact issues exist" and concluding that "[t]he question of intent ultimately turns on factual matters which are best decided by the District Court in the context of the trial itself where the court can consider the precise nature of the proof offered and the credibility of various witnesses"); Frazier v. Bed Bath & Beyond Inc., 2013 WL 1845499, at *7 (D.N.J. Apr. 30, 2013) (denying without prejudice spoliation sanction where the "charge rest[ed] on disputed facts" and stating that the court would be "willing to revisit the issue at trial"); see also Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc., 2016 WL 5092588, at *18 (E.D.N.Y. Sept. 19, 2016) (considering a spoliation motion "which was premised on factual disputes" only after conclusion of trial); Allstate Ins. Co. ex rel. Lothridge v. Gonyo, 2009 WL 962698, at *9 (N.D.N.Y. Apr. 8, 2009) (court must resolve issues of disputed fact at trial before it could consider spoliation sanctions); In re Ski Train Fire in Kaprun Austria on November 11, 2000, 2007 WL 2398697, at *8 n.80 (S.D.N.Y. Aug. 16, 2007) (denying motion for spoliation sanctions based on disputed material facts).

IV. CONCLUSION

For the foregoing reasons, Tchatat's request for spoliation sanctions (Docket # 311) is denied. Obviously, Tchatat's request for attorney's fees is also denied.

SO ORDERED.

Dated: April 14, 2017
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge